422 A.2d 881

**Eleanor FRETTS and George Fretts, her husband**

v.

**Mark A. PAVETTI, t/d/b/a Scottdale Stop N Shop, a/k/a Stop N Shop, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1979.

Filed Nov. 14, 1980.

168

Louis Anstandig, Pittsburgh, for appellant.

William J. Ober, Greensburg, for appellees.

Before PRICE, HESTER and CAVANAUGH, JJ.

PRICE, Judge:

Appellees brought suit for injuries incurred by Mrs. Fretts while she was shopping at appellant's store. A jury trial was commenced on February 7, 1978, and resulted in a $10,000 verdict in favor of appellees, $8,000 of which was awarded to Mrs. Fretts and $2,000 of which was awarded to Mr. Fretts for loss of consortium. Appellant challenges this award claiming that appellees' suit was barred by the statute of limitations, that remarks made during the closing argument were so prejudicial as to require the grant of a mistrial, that the jury was improperly permitted to consider damages for future pain and suffering, and that the verdict was excessive. We find that these contentions lack merit, and we affirm the judgment of the court of common pleas.

Our examination of the initial question regarding the statute of limitations requires a brief recitation of the pertinent procedural history of this case. Appellees commenced this action by filing a complaint on May 24, 1976, against "Stop N Shop, a corporation," alleging that on June 1, 1974, due to the negligent operation of a large stock cart by company employees, Mrs. Fretts was struck on the back of the leg and was injured. The answer filed in response to this complaint denied, *inter alia*, that such a corporation

existed and stated that the business in question was operated by Mark A. Pavetti, trading and doing business as "Scottdale Stop N Shop."

On July 13, 1976, after the expiration of the applicable two year statute of limitations,[1] appellees petitioned the court for leave to amend their complaint to name Mark A. Pavetti as sole proprietor of Scottdale Stop N Shop, a/k/a Stop N Shop. Following argument, the court of common pleas issued an opinion and order denying permission to amend on the ground that the amendment would, in effect, introduce a new party into the action after the statute of limitations had run. Thereafter, appellees petitioned for reargument, which petition was granted by the court. On February 25, 1977, a court en banc ruled without opinion that the petition to amend was granted and issued an order granting the Petition to Amend.

Appellees filed an amended complaint, and appellant in his answer once again asserted the two year statute of limitations. Following denial of his motions for a compulsory non–suit and judgment non obstante veredicto, appellant now raises this issue on appeal.

■ The question for our determination is " 'whether the right party was sued but under a wrong designation, or whether a wrong person was sued and the amendment was designed to substitute another and distinct party.' " *Paulish v. Bakaitis*, 442 Pa. 434, 440, 275 A.2d 318, 321 (1971), *quoting Gozdonovic v. Pleasant Hills Realty Co.*, 357 Pa. 23, 29, 53 A.2d 73, 76 (1947). In the former situation amendment of the complaint should be permitted, despite the running of the statute of limitations, but permitting amendment in the later circumstance would be improper. *Paulish v. Bakaitis, supra; Powell v. Sutliff*, 410 Pa. 436, 189 A.2d 864 (1963).

1. Act of June 24, 1895, P.L. 236, § 2, 12 P.S. § 34 (the two year statute of limitations for personal injury actions has since been repealed by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a)[807], effective June 27, 1978, and a two year period of limitation is now imposed by 42 Pa.C.S. § 5524).

■ In resolving this sometimes thorny issue of post–statute of limitations amendment, the Supreme Court of Pennsylvania has found it useful to examine the entities involved before and after the proposed amendment. When the original complaint seeks to impose liability against the assets of a business entity and the amendment is designed merely to correct the description of the business entity already made a party to the proceedings *e. g.*, an amendment to change the party designation from a corporation to a partnership, the amendment is properly permitted. *See e. g., Gozdonovic v. Pleasant Hills Realty Co., supra; McGinnis v. Valvoline Oil Works, Ltd.*, 251 Pa. 407, 96 A. 1038 (1916). Such an amendment to name the partnership, and not involving the individuals trading as a partnership, is not an attempt to impose liability on the individual members of the partnership and enlarge the assets subject to liability to include their individual property. Instead, the action is continued against a business entity and the assets subject to liability remain the same. *Paulish v. Bakaitis, supra; Powell v. Sutliff, supra.*

■ The court of common pleas relied extensively on this line of analysis in formulating its initial decision to reject the amendment. It concluded that an amendment directing the suit against an individual rather than the originally designated corporation would add a separate and distinct party. While we agree that the foregoing principles may lead to that result, *see Girardi v. Laquin Lumber Co.*, 232 Pa. 1, 81 A. 63 (1911) (amendment that sought to substitute individuals for a corporation properly refused), we find that the instant case is governed by *Waugh v. Steelton Taxicab Co.*, 371 Pa. 436, 89 A.2d 527 (1952), in which the supreme court carved out circumstances that would make it proper to permit an amendment whose effect is to substitute an individual for a business entity.

In *Waugh*, plaintiff brought suit against the Steelton Taxicab Company, designating it as a corporation. The complaint was served at the company's business office and upon an employee. After the statute of limitations had run,

plaintiff discovered that no such corporation existed and that the name was instead employed by an individual in the conduct of his business. The court held that plaintiff was entitled to amend and, in so doing, remarked on its concern that plaintiff's error in pleading might have resulted from deception, whether intended or not, on the part of defendant. The court noted that the word "company" used in the name of a business enterprise reasonably suggests a corporation, absent any indications to the contrary. In the interests of justice, the court felt that an innocent person who has been deprived of his day in court as a result of such deception should be permitted to file the necessary amendment to bring him back into court.

The instant case presents us with an analogous set of facts. The court en banc, ruling on the post–verdict motions, found that Pavetti had registered in compliance with the Fictitious Names Act[2] to conduct the business in question under the name "Scottdale Stop N Shop," but that the store was actually operated only under the name "Stop N Shop." Thus, when appellees' counsel searched the fictitious names register and failed to discover any listing for "Stop N Shop," he logically assumed, having no notice to the contrary, that the business was a corporation and brought suit using that designation. In the same manner that the plaintiff in *Waugh* was deceived by the use of the word "company" in the name of the business enterprise, appellees were misled by the use of the name "Stop N Shop" when it was not properly registered, and they should not be prevented thereby from pursuing their action.

An additional circumstance that parallels the facts of *Waugh* and brings this case within the ambit of its rule is that the corporation named did not actually exist and Pavetti has been the only person involved since the outset of this action. The supreme court in *Waugh* found that this fact served to distinguish cases in which the plaintiff endeavored to include, by amendment, business partners who previously

2. Act of May 24, 1945, P.L. 967, § 1, *as amended* September 23, 1959, P.L. 936, § 1; September 30, 1965, P.L. 571, §§ 1, 2, 54 P.S. § 28.1.

would not have been personally liable for any judgment returned against the company initially named. The court emphasized that "*there was no entity* as [that initially named] *apart from the personality of* [the individual sought to be named]." *Waugh v. Steelton Taxicab Co., supra,* 371 Pa. at 440, 89 A.2d at 529. Like the defendant in *Waugh,* Pavetti was properly served at the location of his business and was not a new party. Therefore, the court of common pleas properly found that the statute of limitations would not prevent this amendment.[3]

■ Appellant's second contention concerns allegedly prejudicial remarks made by appellees' counsel during his closing argument. Immediately following the closing argument, appellant moved for withdrawal of a juror and a mistrial, which motion was denied by the trial judge. Since the closing address had not been recorded, appellant's counsel filed, subsequent to the verdict, an affidavit setting forth his recollection of the remarks he found objectionable in opposing counsel's argument. This procedure was insufficient to preserve the issue for our review.

Our supreme court has reiterated that an objection to an unrecorded argument must be made during the argument at the time of the challenged remark to assure an adequate and accurate record on appeal. *Commonwealth v. Perkins,* 473 Pa. 116, 373 A.2d 1076 (1977); *Commonwealth v. Adkins,* 468 Pa. 465, 364 A.2d 287 (1976). In *Commonwealth v. King,* 227 Pa.Super. 168, 323 A.2d 260 (1974), this court delineated the

---

**3.** The court of common pleas, in its December 29, 1976 opinion denying the petition to amend, placed heavy reliance on *Paulish v. Bakaitis,* 442 Pa. 434, 275 A.2d 318 (1971). The court quoted a portion of that case which stated that the principle of denying permission to amend after the running of the statute of limitations when a new party would be named was followed in "*Waugh v. Steelton Taxicab Company,* 371 Pa. 436, 89 A.2d 527 (1952), *disallowing* a post–statute of limitations amendment from company to individual . . . ." 442 Pa. at 441, 275 A.2d at 321 (emphasis added). This is a misstatement of the holding in *Waugh,* which *allowed* the amendment. This error may account for the court of common pleas' failure to address the similarities between *Waugh* and the instant case and for its later permission to amend.

proper method to be used when objecting to statements made during an unrecorded address:

"In order to avail himself of the right to object to improper remarks or a misstatement of fact or an unfair comment, counsel must object and move for the withdrawal of a juror, whereupon the court should direct the stenographer to place upon the record the court's understanding of the remarks so that error may properly be assigned if the motion to withdraw the juror is denied. *Commonwealth v. Mika*, 317 Pa. 487, 177 A. 3 (1935). If the court refuses to direct the stenographer to place upon the record remarks to which objection has been made, the opposing counsel may place the remarks on the record by affidavit." 227 Pa.Super at 172, 323 A.2d at 262.

Since appellant's counsel waited until the conclusion of the address to make his objection, it was untimely and his contentions are waived.

Appellant's third assignment of error challenges the trial court's decision to allow the jury to consider future pain and suffering as an element of damages. Mrs. Fretts testified at trial that she continues to experience pain and a stinging sensation in the back of her leg where she was hit by the stock cart. Her leg and ankle are also likely to swell if she remains on her feet for any time. She stated that two or three nights a week she has difficulty sleeping because her leg aches, and that she has to take a sleeping tablet to get to sleep. She further testified that she wears either elastic or support hose to prevent her leg from hurting. The doctor who had treated Mrs. Fretts after the accident, Doctor Rosemary Pritts, testified on cross examination that the injury had cleared up and that the scarring and lump that had formed from the impact of the cart, other than being readily visible would not permanently affect the leg. However, Doctor Pritts also testified that such an injury can aggravate varicose veins, a condition to which Mrs. Fretts is subject, and cause swelling. Moreover, the doctor stated that she had not examined Mrs. Fretts since February 7, 1975, three years prior to the date of trial and nine months

following the accident. After February, Mrs. Fretts' primary physician, for whom Doctor Pritts had been substituting, returned and resumed care of Mrs. Fretts.

For a jury to be permitted to consider future pain and suffering as an element of damages, competent testimony demonstrating a likelihood that the condition will persist in the future must be present, and the jury must reasonably be able to infer from this testimony the probable future consequences of the condition. Expert testimony is not required to predict the exact result anticipated, but more than a mere possibility or fear of future consequences must be shown. *Baccare v. Mennella*, 246 Pa.Super. 53, 369 A.2d 806 (1976).

In light of Mrs. Fretts' testimony concerning her pain and suffering, there was sufficient evidence on the record to submit this issue to the jury. This testimony was not contradicted by that of the doctor. Although Doctor Pritts stated that the wound had healed, leaving a hematoma, or lump, and scarring as the only *permanent* conditions, she also pointed out that this type of injury aggravates varicose veins and causes swelling. As Mrs. Fretts testified, she experiences periods of pain and discomfort due to the swelling of her leg, even though it is not a constant condition. Furthermore, the fact that Mrs. Fretts was particularly susceptible to serious injury by her contact with the cart will not limit appellant's liability because negligence causing aggravation of a pre–existing condition subjects a tortfeasor to the same degree of liability as the infliction of an original wound. The tortfeasor must take his victim as he finds him. *Pavorsky v. Engels*, 410 Pa. 100, 188 A.2d 731 (1963); *Lebesco v. Southeastern Pennsylvania Transportation Authority*, 251 Pa.Super. 415, 380 A.2d 848 (1977).

Finally, appellant argues that the jury's verdict of $10,000 based upon provable medical expenses of $97.17, was patently excessive. We must disagree.

Our reluctance to interfere with a jury verdict that has been assailed as excessive but sustained by the trial court has been repeated frequently. *Kravinsky v. Glover*, 263

Pa.Super. 8, 396 A.2d 1349 (1979); *Simmons v. Mullen*, 231 Pa.Super. 199, 331 A.2d 892 (1974). The grant or refusal of a new trial on this ground is within the discretion of the trial court and will not be reversed absent a clear abuse of discretion. *Albert v. Alter*, 252 Pa.Super. 203, 381 A.2d 459 (1977). Disparity between out–of–pocket expenses and the amount of the verdict is not sufficient basis to award a new trial, and on appeal we will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. *Weed v. Kerr*, 416 Pa. 233, 205 A.2d 858 (1965); *Kravinsky v. Glover, supra.*

▪ Even though each case must be decided according to its unique and special circumstances, we have compiled a list of relevant factors in determining the excessiveness of a verdict. These factors include: (1) the severity of the injury; (2) whether the injury is manifested by objective physical evidence or merely subjective testimony; (3) whether the injury will permanently affect the plaintiff; (4) whether the plaintiff can continue his employment; (5) the size of out–of–pocket expenses occasioned by the injury; and (6) the amount demanded in the original complaint. *Robert v. Chodoff*, 259 Pa.Super. 332, 393 A.2d 853 (1978); *Kemp v. Philadelphia Transportation Co.*, 239 Pa.Super. 379, 361 A.2d 362 (1976).

▪ In the instant case, these factors weigh in favor of upholding the verdict. Mrs. Fretts was required to spend a full month confined to her bed and a month and one–half on crutches. This course of treatment indicates the severity of her injury. Objective evidence of the injury, a visible lump and scarring, was offered to the jury. Since Mrs. Fretts is fifty–nine and a housewife, her earning capacity was not affected by this injury, but it has affected her enjoyment of life in that she is no longer capable of activities in which she engaged prior to the accident, such as swimming. Although out–of–pocket expenses in this case were minimal, there was considerable testimony in this case concerning pain and suffering. We have previously noted the difficulty in achieving precision in calculating appropriate compensation

because one cannot discern the amount of pain and suffering that was endured merely by considering the expenses incurred. *See Zagari v. Gralka,* 264 Pa.Super. 239, 399 A.2d 755 (1979); *Robert v. Chodoff, supra; Pape v. Short,* 28 D. & C.2d 581 (C. P. Allegheny Co. 1961), *aff'd.,* 199 Pa.Super. 617, 186 A.2d 431 (1962). As a final consideration, appellees in their original complaint requested damages in excess of the $10,000 they received. Thus, the record convinces us that the jury was not acting in such an irrational or unduly sympathetic manner that justice was denied, and the verdict will not be disturbed.

In accord with the above reasoning, we affirm the judgment of the Court of Common Pleas.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

I dissent on the grounds that the trespass action in this case against Mark Pavetti t/d/b/a Scottdale Stop N Shop a/k/a Stop N Shop is barred by the statute of limitations.[1] The appellant (the defendant in the court below) properly raised the defense of statute of limitations under new matter in his answer to the appellees' amended complaint which for the first time named Mark A. Pavetti, trading and doing business as Scottdale Stop N Shop, as a defendant.[2]

The original complaint was against "Stop N Shop, a corporation." In paragraph 2 of the complaint the defendant was described as "a corporation having a place of business at 200 South Broadway Street in the Borough of

1. The statute of limitations in effect at the time this action was brought provided that actions for personal injuries "must be brought within two years from the time when the injury was done and not afterwards." Act of June 24, 1895, P.L. 236 § 2, 12 P.S. § 34. The present statute of limitations pertaining to trespass actions, effective June 27, 1978, 42 Pa.C.S. § 5524 also requires that an action in trespass be commenced within two years.

2. Pa.R.C.P. 1030 states that "[a]ll affirmative defenses, including but not limited to the defenses of . . . [the] statute of limitations, shall be pleaded in a responsive pleading under the heading, 'New Matter.' "

Scottdale, Westmoreland County, Pennsylvania." Paragraph 4 of the original complaint stated "that the said defendant corporation at the time of the matters herein complained of, was acting through its authorized agents, servants, workmen and employees in the furtherance of the business, and in the course of the business of the said defendant corporation and under the direction and control of the said defendant corporation."

Pa.R.C.P. 2177 provides that "[a]n action shall be prosecuted by or against a corporation or similar entity in its corporate name." The Rules of Civil Procedure further provide that a "corporation or similar entity" shall include any public, quasi–public or private corporation "or any other association which is regarded as an entity distinct from the members composing the association."[3] There is no doubt that in the original complaint the appellees were interested only in suing a corporation, an entity distinct from its shareholders, and in no way contemplated suit against any individual.

The Majority states (page 883): "The question for our determination is 'whether the right party was sued but under a wrong designation, or whether a wrong party was sued and the amendment was designed to substitute another and distinct party,'" citing *Paulish v. Bakaitis*, 442 Pa. 434, 440, 275 A.2d 318, 321 (1971), quoting *Gozdonovic v. Pleasant*

**3.** Pa.R.C.P. 2176 provides:
   As used in this chapter
      "action" means any civil action or proceeding at law or in equity brought in or appealed to any court which is subject to these rules;
      "corporation or similar entity" includes any public, quasi–public or private corporation, insurance association or exchange, registered partnership, partnership association limited, joint stock company or association, "Massachusetts Trust," or any other association which is regarded as an entity distinct from the members composing the association;

      "corporate name" means any name, real or fictitious, under which a corporation or similar entity was organized, or conducts business, whether or not such name has been filed or registered;

*Hills Realty Co.,* 357 Pa. 23, 29, 53 A.2d 73, 76 (1947).[4]
Initially, our inquiry does not appear difficult because obviously the wrong party, a nonexistent corporation, was sued and the amendment was designed to bring in as a defendant a party distinct from Stop N Shop, a corporation. However, if a plaintiff is misled into believing that the person he is suing is a corporation, when this is not the fact, then an amendment may be allowed. The Majority relies on *Waugh v. Steelton Taxicab Company,* 371 Pa. 436, 89 A.2d 527 (1952), which permitted the amendment of a complaint after the statute of limitations had run where a taxi cab company was sued as a corporation, although it was not. In *Waugh* the court found that the plaintiff was misled as the taxi cab company used the word "company" in its title. The *Waugh* case is readily distinguishable from our own as the Supreme Court stated at 371 Pa. at 439, 89 A.2d at 528:

> The mistake of the plaintiff in this case was a natural one. The word "company," when used as part of a name of a business enterprise reasonably suggests a corporation and the public logically assumes, having no notice to the contrary, that it is a corporation . . . . Our only province is to permit any innocent person who has been deprived of his day in court as a result of such deception to file the necessary amendment which will bring him back into court.

Justice Bell filed a dissenting opinion in which Justice Horace Stern joined. The dissent states:

> It is clear that the right party was never sued. A non–existent corporation was sued; the suit against it and any verdict and judgment recovered therein would have been

4. In *Gozdonovic v. Pleasant Hills Realty Co., supra,* the defendant was named as a corporation. Subsequently discovering that the company was not a corporation but a partnership, plaintiff moved to amend and was permitted to do so although the statute of limitations had run. The court stated at 357 Pa. 29, 53 A.2d 76, "*It is to be noted that plaintiff did not attempt to bring in as defendants the individual members of the partnership; This clearly would not have been permissible* (emphasis added) . . . . The defendant newly named under the amendment was merely the partnership *entity*" (emphasis in original).

worthless and an absolute nullity; a suit void ab initio cannot be amended after the statute of limitations has expired by bringing in a new party, even though the new party was trading under the same name as the original party defendant and might have been originally sued. (371 Pa. 444, 89 A.2d 530–1)

In the instant case the word "company" was not used in the title of Mr. Pavetti's store so that there was no reason why the appellees would believe a corporation was involved. The Business Corporation Law of May 5, 1933, P.L. 364 as amended, 15 P.S. § 1202 provides that the corporate name "shall contain (1) the word 'corporation,' 'company,' 'incorporation,' or 'limited' or an abbreviation thereof . . ." Certainly, if one uses the word "company" or "corporation" in his business name, he runs the risk that the public will believe that a corporation is involved. In the instant case if appellees had checked with the Corporation Bureau of the Department of State they would have learned that there was no corporation named "Stop N Shop" registered either as one incorporated in Pennsylvania or in a foreign jurisdiction and authorized to do business in this state. This would have alerted appellees that a corporation was not involved. As a practical matter, appellees could have requested a search by a commercial credit rating firm to determine if Stop N Shop was a corporation.

The Majority states (page 884) "when appellees' counsel searched the fictitious name register and failed to discover any listing for 'Stop N Shop' he logically assumed, having no notice to the contrary, that the business was a corporation and brought suit using that designation." I cannot agree that one may logically assume that every business not registered under the Fictitious Names Act is a corporation, especially when the name of the business does not contain any word such as "company" or "corporation" to indicate that it is a corporation, as required by the Business Corporation Law, supra. Undoubtedly, many small businesses, and perhaps larger ones, carry on without being either corporations or registered under the Fictitious Name Act of May 24,

1945, P.L. 967, 54 P.S. § 28.1 et seq. In this case we do not have the situation where Stop N Shop did not register at all under the Fictitious Name Act. The owner of the grocery store registered under the name of Scottdale Stop N Shop and the business was conducted under the name of Stop N Shop. The Act states the failure to register "shall not impair or affect the validity of any contract with such person or persons, and actions or proceedings at law or in equity may be instituted and maintained on any such contract," (54 P.S. § 28.4) after compliance with the Act and paying a license fee or fine of twenty–five dollars. Appellant registered under the Act, and his failure to use the word "Scottdale" in his business name does not indicate failure to comply. There is in this case no indication whatsoever that the defendant registered his business under the Act in one manner and carried on the business using a slightly different name with the intent to deceive the public.

The case of *Nearing v. Zuzek, Jr.*, 65 D. & C.2d 371 (1974–Warren County) is applicable. In that case the plaintiff was injured when involved in a motor vehicle accident with a truck registered in the name of "Zuzek and Son" and driven by Lloyd Irwin. In the plaintiff's original complaint, he named as defendants Emil Zuzek, Jr. and Andy Zuzek, Jr., t/d/b/a Zuzek and Son and Lloyd Irwin. After the statute of limitations had expired, plaintiff learned that Emil Zuzek, Jr. had no interest in "Zuzek and Son" and that Emil Zuzek, was the real owner of the truck operated by Irwin and that the truck was operated under the business name of "Zuzek Lumber Company," which name was not registered under the Fictitious Name Act. Plaintiff contended that because of the failure of Emil Zuzek to file under the Fictitious Name Act he was misled as to the true owner of the truck involved in the accident. The court stated at pages 373–4: "There can be no question that the wrong party was sued in this instance and the only question remaining is whether the failure of Emil Zuzek to register under the Fictitious Name Act was an omission of a duty on his part imposed upon him by the Fictitious Name Act and,

by a failure to do so, plaintiff has been misled." The court refused to allow the amendment. At page 374 it was stated:

A review of the annotated cases under this section compels a conclusion that it was the legislature's intent it apply to individuals carrying on or conducting a business under an assumed name to alert the public with whom they were doing business . . . and registration of a fictitious name is a condition precedent to commencement of any action in any of the courts of this Commonwealth as provided by Section 4 thereof: 54 P.S. § 28.4. *Further, it was not the intent of the legislature that the act [be] applied to tort actions: McLaughlin v. J. E. Baker and Co.*, 5 D. & C. 781 (1924). (Emphasis added).

Finally, the majority opinion states at page 883:

When the original complaint seeks to impose liability against the assets of a business entity, and the amendment is designed merely to correct the description of the business entity already made a party to the proceedings, e. g., an amendment to change the party designation from a corporation to a partnership, the amendment is properly permitted. *See e. g., Gozdonovic v. Pleasant Hills Realty Co., supra.*

In this case a corporation was sued originally. The original action sought to impose liability against the assets of a corporation. In the amended complaint appellees seek to impose liability not against corporate assets, but against the assets of an individual, Mark A. Pavetti. The majority opinion states that an amendment to change the designation of a defendant from a corporation to a partnership is permitted. This, however, has no bearing on the issue of permitting an individual to be substituted as defendant in place of a corporation after the statute of limitations has expired. Where an individual is sued the complaint may not be amended after the statute of limitations has expired to substitute a corporation even though the individual traded as "The Forty Fort Ice Cream Co." and the corporation was called "Forty Fort Ice Cream Co., Inc." *See DuBois v. Mosier*, 50 Luzerne Leg.Reg.Rep. 171 (1960).

The original opinion of the court below properly decided that the complaint against Stop N Shop, a corporation, could not be amended after the statute of limitations had run to bring in an entirely new defendant. In my opinion, the lower court sitting en banc erred when it reversed its original opinion and this Court is likewise in error in affirming the judgment of the court below.