457 A.2d 1307

**Michael POWELL**

**v.**

**CITY OF PHILADELPHIA and John Jones, Appellants.**

Superior Court of Pennsylvania.

Argued Jan. 7, 1983.

Filed March 18, 1983.

Pamela L. Perry, Chief Assistant City Solicitor, Philadelphia, for appellants.

Myron H. Deutsch, Philadelphia, for appellee.

Before BECK, JOHNSON and MONTEMURO, JJ.

BECK, Judge:

Appellants, City of Philadelphia and John F. Jones, appeal from a May 13, 1980 order entered by the Court of Common Pleas of Philadelphia County sitting en banc which dismissed appellants' timely filed motion for a new trial and affirmed the trial judge's order of April 18, 1979 in favor of appellee, Michael Powell, in the amount of $150,000.00.

In this appeal, appellants do not contest liability; rather, they argue that the lower court erred in awarding excessive damages to appellee for injuries he sustained in an altercation with a City fireman, appellant-Jones. We reject this claim and therefore affirm.

The record reflects that a group of City firemen responded to a false alarm and apprehended two boys who they thought had pulled the alarms. Appellee, who had observed the perpetrators pulling the alarm, yelled to the firemen that they had apprehended the wrong children. Jones then crossed the street to question appellee and an argument followed during which Jones struck appellee's left knee with a wrench knocking him to the steps. Jones then grabbed appellee by the shirt and threw him to the curb. That distance was estimated to be approximately eight feet. Appellee did not, and apparently could not, stand after being thrown to the pavement; he was carried off on a police stretcher.

In its opinion, the en banc trial court rejected appellants' claim that Jones was acting in self defense and found that he was acting in the scope of his employment and that both he and the City therefore were liable. Appellants do not question those findings on appeal; they merely attack the award as being excessive.

■ Our oft-cited scope of review in evaluating this claim was reiterated in *Christides v. Little*, 274 Pa.Super. 343, 347, 418 A.2d 438, 440 (1980) (quoting *Skoda v. West Penn Power Co.*, 411 Pa. 323, 338, 191 A.2d 822, 830 (1963)):

Appellate courts are properly reluctant to interfere with jury verdicts in personal injury cases, which verdicts

are supported by the opinion and approval of the trial judge and the court en banc. *Roadman v. Bellone,* 379 Pa. 483, 108 A.2d 754 (1954). The granting or refusal of a new trial because of excessiveness is peculiarly within the discretion of the court below and we will not interfere, absent a clear abuse of discretion. *Hall v. George,* 403 Pa. 563, 170 A.2d 367 (1961). We will not hold that a verdict is excessive unless it is 'so grossly excessive as to shock our sense of justice.' *Kane v. Scranton Transit Co.,* 372 Pa. 496, 94 A.2d 560 (1953)[.]

While in the instant matter, the trial judge, rather than a jury, arrived at the amount of damages which is claimed to be excessive, it is clear "that the findings of a trial judge sitting without a jury ... are accorded the same weight as the verdict of a jury." *Christides,* 274 Pa.Super. at 347, 418 A.2d at 440 (citations omitted).

■ This Court in *Robert v. Chodoff,* 259 Pa.Super. 332, 393 A.2d 853 (1978) reiterated the following factors found relevant in *Kemp v. Philadelphia Transportation Co.,* 239 Pa.Super. 379, 361 A.2d 362 (1976) in assessing whether a verdict is excessive:

(1) the severity of the injury, (2) whether plaintiff's injury is manifested by objective physical evidence instead of merely the subjective testimony of the plaintiff, (3) whether the injury will affect the plaintiff permanently, (4) whether the plaintiff can continue with his employment, (5) the size of plaintiff's out-of-pocket expenses, and (6) the amount plaintiff demanded in the original complaint.

*Chodoff,* 259 Pa.Super. at 367, 393 A.2d at 871 (footnote omitted). We proceed to evaluate the above award in light of the preceding factors.

■ We find initially that appellee's injury is severe and that it is manifested by objective physical evidence. After being struck on the kneecap, appellant suffered extreme pain and was unable to stand up. As a result of this injury, appellee first endured a partial patellectomy (removal of the kneecap) and subsequently a complete patellectomy. He

then was repeatedly hospitalized and treated for, *inter alia,* an infection of the knee and removal of wire sutures from the earlier operations that protruded from his knee.

We note also that the loss of the patella is, of course, a significant physiological detriment. Dr. Henry F. Wieder testified to its two major functions:

It has at least a twofold purpose. First of all it serves as a physical protection to the front of the knee where a portion of the articular surpasses, exposed especially when the knee is flexed and bent. The kneecap stays in its same relationship to the leg bones and the knee bends, the articular surface, weight-bearing articular surface of the femur is brought into exposed position and the kneecap covers it and protects this portion of the joint surface when the knee is bent.

Then its second major purpose is, as I have been talking about before, a mechanical advantage. It raises the effective line of action of the quadricep tendon away from the center of rotation of the knee which is back in the condyle of the femur and by raising that center of rotation it increases the focrum [sic] of action.

For instance, if you try to turn a nut on a bolt with a pair of pliers and it's tight or you used a wrench with a long handle it's much easier to turn it with a long-handle wrench. The patella is the handle of the wrench on the knee.

Notes of Testimony ("N.T.") 3/6/79 at 75–76.

■ We find further that there was unequivocal testimony from Dr. Wieder * concerning the permanency of appellee's injury and appellants, in fact, acknowledge that "[a]mong the permanent limitations resulting from [appel-

---

* Appellants argue that the testimony of Dr. Wieder, because it was based upon the inadmissible Philadelphia General Hospital records, was also inadmissible. Those records were not admitted because of a lack of proper authentication. Appellee correctly notes, however, that Dr. Wieder testified at trial that his opinion would be the same even if he had not seen the records of that hospital. He stated clearly: "Based on the history as given me, just by Mr. Powell and the findings of my examination, my opinion would still be the same." N.T. 3/6/79 at 68. We therefore find appellants' claim to be meritless.

lee's] knee injuries are [his]: 1. inability to run, 2. inability to carry weights on uneven surfaces, 3. sensitivity of the scar, and 4. pain of the knee in general in cold weather." Brief for Appellants at 15.

Appellants emphasize that only one bill for $66.00 from Episcopal Hospital was admitted into evidence to substantiate the cost of appellee's medical treatment; the remaining bills, primarily from Philadelphia General Hospital, were not admitted because they were not properly authenticated. Appellants are, of course, accurate in their statement, but this Court has held that "[d]isparity between out-of-pocket expenses and the amount of the verdict is not sufficient basis to award a new trial, and on appeal we will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice." *Fretts v. Pavetti*, 282 Pa.Super. 166, 176, 422 A.2d 881, 885 (1980) (citations omitted); *e.g.*, *Murphy v. Penn Fruit Company*, 274 Pa.Super. 427, 418 A.2d 480 (1980). In light of the prolonged and repeated hospitalizations and operations discussed above and acknowledged by appellants, we give little weight to the disparity between the documentable out-of-pocket expenses and the award.

This Court in *Fretts v. Pavetti*, 282 Pa.Super. at 176–177, 422 A.2d at 886, concluded that such expenses certainly do not control the assessment of damages for pain and suffering:

Although out-of-pocket expenses in this case were minimal, there was considerable testimony in this case concerning pain and suffering. We have previously noted the difficulty in achieving precision in calculating appropriate compensation because one cannot discern the amount of pain and suffering that was endured merely by considering the expenses incurred. *See Zagari v. Gralka*, 264 Pa.Super. 239, 399 A.2d 755 (1979); *Robert v. Chodoff*, [259 Pa.Super. 332, 393 A.2d 853 (1978) ]; *Pape v. Short*, 28 D. & C.2d 581 (C.P. Allegheny Co. 1961), *aff'd*. 199 Pa.Super. 617, 186 A.2d 431 (1962).

■ Appellants also place considerable emphasis upon the fact that appellee was unemployed at the time of the incident and the conclusion that his sporadic work record after the injury cannot be directly tied to appellee's injury. As we recently noted in *Mattox v. City of Philadelphia*, 308 Pa.Super. 111, 129, 454 A.2d 46, 55 (quoting *Wright v. Engle*, 256 Pa.Super. 321, 326, 389 A.2d 1144, 1147 (1978)), "[t]he consideration of loss of earning capacity is not solely the comparative amount of money earned before or after an injury. The true test is whether or not there is a loss of earning power, and of ability to earn money." [*Mazi v. McAnlis*, 365 Pa. 114, 121, 74 A.2d 108, 112 (1950).] While we have little doubt that appellee's physical condition impaired his employment prospects after the incident, the award need not be premised upon a finding of lost wages. Indeed, the well-documented pain and suffering which was directly attributable to the injury and which will permanently afflict appellee was a sufficient basis upon which to predicate the award.

The final factor in the *Chodoff* calculus is the amount plaintiff demanded in his original complaint. We are at a loss to evaluate that factor as the complaint is not a part of the record. We note, however, that the analysis of the *Chodoff* Court bearing upon this variable is persuasive in the instant case as well. In *Chodoff*, we noted that "[t]he record does not contain the original complaint. In any event, the amount of damages claimed in the 1965 complaint would be of limited relevance to our inquiry since the substantial bulk of appellee's alleged damages accrued after the filing of the complaint." *Id.*, 259 Pa.Super. at 367 n. 39, 393 A.2d at 871 n. 39. Here much of the surgery (most notably, the total patellectomy) and the resulting pain and weakening of the left leg occurred after the filing of the June 25, 1973 complaint.

We conclude, therefore, that in light of the manifest severity and permanence of his injury and the resulting suffering and disfigurement, the trial court's order estab-

lishing damages in the amount of $150,000.00 was not an abuse of its discretion.

Order affirmed.