530 A.2d 1362

**Tia Marie GLOMB, a Minor by her Guardian Ad Litem, John F. SALOPEK, Appellee,**

v.

**John and Marie GLOMB, Husband and Wife, Appellants,**

v.

**Sherry GINOSKY.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1986.

Filed Sept. 10, 1987.

Petition for Allowance of Appeal Denied Feb. 16, 1988.

208

James D. Crawford, Philadelphia, for appellants.

Keith R. McMillen, Assistant District Attorney, Aliquippa, for appellee.

Before CIRILLO, President Judge, and ROWLEY, OLSZEWSKI, DEL SOLE, MONTEMURO, BECK, TAMILIA, KELLY and POPOVICH, JJ.

MONTEMURO, Judge:

Appellants John and Marie Glomb challenge the denial of their post-trial motions. A jury found that the Glombs had negligently hired and retained appellee Sherry Ginosky to care for the Glombs' one-year-old daughter, appellee Tia Marie Glomb. Tia Marie, through her guardian ad litem, instituted this action against her parents, who in turn joined Ms. Ginosky as an additional defendant. We address two issues on appeal: (1) whether the trial court properly refused to allow the jury to apportion liability between the Glombs and Ms. Ginosky; and (2) whether the $1.5 million jury verdict in favor of Tia Marie was excessive. None of the Glombs' arguments on these issues convince us that we should disturb the judgment of the Beaver County Court of Common Pleas. We therefore affirm.

The evidence at trial established the following facts. Tia Marie is the only child of John and Marie Glomb. At the time of Tia Marie's birth, both John and Marie worked full-time. John's employment required him to travel away from home up to six days a week. Marie worked Monday through Friday from 7:00 in the morning until 5:30 or 6:00 in the evening. The Glombs therefore employed baby-sitters to provide in-home care for Tia Marie during the work week. Sometime during the summer of 1982, Tia Marie's second baby-sitter quit on short notice because of ill-health. In need of an immediate replacement, the Glombs hurriedly hired Sherry Ginosky at the beginning of August, 1982. Within two or three weeks, the Glombs began to notice problems. Small bruise marks appeared on Tia Marie's face and body. When asked about the marks, Ms. Ginosky would offer explanations that John Glomb found implausible. On one occasion, John observed that his daughter seemed afraid of Ms. Ginosky. After the Glombs discovered a large, hand-shaped bruise on Tia Marie's leg in late October of 1982, John threatened to discharge Ms. Ginosky if any more bruises appeared. Two days after this warning, however, Tia Marie suffered grave injuries to her face and head while in the care of Ms. Ginosky. The paramedics

whom Ms. Ginosky summoned to the Glomb residence on the morning of November 3, 1982 found the child unconscious. Ms. Ginosky explained that Tia Marie had tripped over a toy and struck her head on a child's rocking chair. While unconscious, Tia Marie experienced periodic seizures during which she stopped breathing. Her face and head were severely bruised, and she remained in the hospital for nearly two weeks. Since her discharge from the hospital, Tia Marie has required extensive physical rehabilitation to remedy the effects of the brain damage she suffered. The parties agree that Sherry Ginosky intentionally inflicted these injuries upon her charge.

As a result of the November 3, 1982 incident, the court appointed a guardian ad litem for Tia Marie. The guardian filed a complaint on Tia Marie's behalf against John and Marie Glomb. The Glombs immediately joined Ms. Ginosky as a third party defendant. Following a trial at which Ms. Ginosky was neither present nor represented by counsel, the trial court directed the jury to find that Ms. Ginosky had "intentionally injured" Tia Marie and that the Glombs therefore "are entitled to indemnification" from Ms. Ginosky. The court refused, however, to instruct the jury on apportionment of liability between Ms. Ginosky and the Glombs. At sidebar, the court informed counsel that the Glombs could seek "indemnification" from Ms. Ginosky in a separate proceeding if the Glombs ultimately bore the burden of satisfying a judgment.[1] The jury returned with a $1.5 million verdict against both the Glombs and Ms. Ginosky, jointly and severally. The trial court denied the Glombs' motions for post-trial relief, and this timely appeal followed the entry of judgment. Although a three-judge panel of this court decided to affirm the judgment, we granted the Glombs' petition for reargument before the court en banc.

**1.** We do not address in this appeal whether the Glombs can seek indemnity from Ms. Ginosky or whether they should instead seek contribution pursuant to the Uniform Contribution Among Tortfeasors Act, 42 Pa.C.S. § 8321 *et seq.* See *Svetz v. Land Tool Co.,* 355 Pa.Super. 230, 240–243, 513 A.2d 403, 409–10 (1986), for a discussion of the difference between these two equitable remedies.

We will address first the question of whether the trial court properly refused to allow apportionment of liability in this case and second the question of whether the verdict was excessive.

## I.

As this case clearly illustrates, a decision to impose "joint and several" liability upon multiple tort-feasors, rather than to "apportion" liability between them, can alter significantly the risks of tort litigation.[2] Imposition of joint and several liability enables the injured party to satisfy an entire judgment against any one tort-feasor, even if the wrongdoing of that tort-feasor contributed only a small part to the harm inflicted. Apportionment of liability, on the other hand, limits the liability of each tort-feasor to that portion of the harm which he or she caused. Thus, if the court imposes joint and several liability, and if only one of the joint tort-feasors is financially responsible, the injured party can attempt to recover the full measure of damages against that single source. The financially responsible tort-feasor who satisfies more than his or her equitable share of the joint liability then bears the risk of recovering the excess from his or her less responsible fellow tort-feasors. If, however, the court decides to apportion liability, the *injured party* bears the risk that the financial irresponsibility of one tort-feasor will defeat a complete recovery. *See generally*, W. Keeton & W. Prosser, Prosser and Keeton on Torts § 52 (5th ed. 1984). By asserting that the court should apportion liability, the Glombs seek to avoid the risk that Ms. Ginosky, their fellow tort-feasor, will lack the resources to satisfy her share of the $1.5 million verdict.

2. We distinguish at the outset between "apportionment" of separate liabilities between separate tort-feasors, which the Glombs seek here, and "equitable apportionment" of a joint liability between joint tort-feasors. "Equitable apportionment" of joint liability, also known as the apportionment of "equitable shares," is a device by which a defendant obtains contribution from his or her co-defendant. *See* Restatement (Second) of Torts § 886A comment h (1965). We do not address the equitable right to contribution among joint tort-feasors in this case.

■ A court can direct the apportionment of liability among distinct causes only when the injured party suffers distinct harms or when the court is able to identify "a reasonable basis for determining the contribution of each cause to a single harm." Restatement (Second) of Torts § 433A(1) (1965). See *Martin v. Owens-Corning Fiberglass Corp.*, 515 Pa. 377, 528 A.2d 947 (1987); *Wade v. S.J. Groves & Sons Co.*, 283 Pa.Super. 464, 424 A.2d 902 (1981). In the present case, the parties agree that Tia Marie has suffered a single harm. The availability of apportionment therefore hinges upon whether the party who seeks it can demonstrate some logical, reasonable or practical basis for assigning discrete portions of the over-all liability to discrete causes. *See Martin v. Owens-Corning Fiberglass Corp., supra; Bryant v. Girard Bank*, 358 Pa.Super. 335, 517 A.2d 968 (1986); *Capone v. Donovan*, 332 Pa.Super. 185, 480 A.2d 1249 (1984); *Wade v. S.J. Groves & Sons Co., supra;* Restatement (Second) of Torts § 433A comment d and § 433B(2); W. Keeton & W. Prosser, *supra* at § 52. Determining whether a "logical, reasonable or practical" basis for apportionment exists necessarily requires the court to consider the unique circumstances of each case. Although most single personal injuries defy objective apportionment, *see Capone v. Donovan, supra*, 332 Pa.Superior Ct. at 189, 480 A.2d at 1251, we should not allow one party to bear an entire liability if the particular facts of the case will support a reasonable alternative. On the other hand, we cannot allow an arbitrary apportionment merely to avoid imposition of entire liability. A court should not limit the innocent plaintiff's ability to recover the full measure of damages unless the court has some reasonable basis for doing so. *See* Restatement (Second) of Torts § 433A comments h and i.[3]

3. The Glombs argue that we cannot hold negligent tort-feasors jointly and severally liable with intentional tort-feasors. We disagree. In *Svetz v. Land Tool Co.*, 355 Pa.Super. 230, 513 A.2d 403 (1986), this court determined that the Uniform Contribution Among Tort-Feasors Act, 42 Pa.C.S. § 8321 *et seq.*, which governs the equitable right to contribution among joint tort-feasors, applies to co-defendants whose liability rests on different theories. We therefore concluded that the

■ As the Glombs correctly observe, this court in *Voyles v. Corwin*, 295 Pa.Super. 126, 441 A.2d 381 (1982), identified seven "factors" that courts often consider in determining whether liability is apportionable:

> the identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiff; identity of the facts as to time, place or result; whether the injury is direct and immediate, rather than consequential[;] responsibility of the defendants for the same *injuria* as distinguished from *damnum.*

*Voyles, supra,* 295 Pa.Superior Ct. at 130–131, 441 A.2d at 383 (quoting W. Prosser, Law of Torts § 46 n. 2 (4th ed. 1971)). *See also Harka v. Nabati,* 337 Pa.Super. 617, 487 A.2d 432 (1985). The Glombs suggest that the trial court in the present case should have considered these "factors" in determining whether to allow apportionment. The Glombs further suggest that if the court had applied this multi-pronged "test" supposedly established by *Voyles,* it would have allowed the jury to apportion liability between the defendants and the additional defendant. The *Voyles* court, however, did not intend to establish a single, cumulative "test" of apportionability. Nor did it intend to establish an exhaustive list of independent "tests." The determination of whether to allow apportionment is entirely a practical inquiry into the circumstances of each case. In some cases, reference to one or more of the *Voyles* factors might aid the inquiry. *See, e.g., Harka v. Nabati, supra* (court considered differences between duties that each defendant owed to plaintiff, differences between causes of action asserted against each defendant and differences in evidence that plaintiff would use against each defendant to determine that causes of injury were apportionable); *Lasprogata*

negligent distributor and the strictly liable manufacturer of a defective product were "joint tort-feasors" within the meaning of the Uniform Act. *See also McMeekin v. Harry M. Stevens, Inc.,* 365 Pa.Super. 580, 530 A.2d 462 (1987). Our reasoning in *Svetz* applies with equal force to a baby-sitter who assaults his or her charge and the parents who negligently hire and supervise that baby-sitter.

*v. Qualls*, 263 Pa.Super. 174, 397 A.2d 803 (1979) (court considered difference in time between each defendant's negligent act and differences between duties that each defendant owed to plaintiff to determine that causes were apportionable). In other cases, the *Voyles* "factors" will not help the court to determine whether a "logical, reasonable or practical" basis for apportionment exists. *See, e.g., Martin v. Owens-Corning Fiberglass Corp., supra* (court cited *Voyles* but refused apportionment because jury could only "roughly approximate" from expert opinion evidence amount of lung disorder caused by smoking and amount caused by exposure to defendant's asbestos: evidence did not address with "reasonable certainty" duration of exposure to each aggravation). Although a fixed and talismanic "test" would certainly foster ease of analysis and predictability of result, it would also blind the court to the particular problems of the case at hand and would lead, in some cases, to artificial and arbitrary apportionment.

■ In the present case, some of the *Voyles* factors would support apportionment of liability between the Glombs and Ms. Ginosky. For example, Ms. Ginosky breached a duty different from the one breached by the Glombs, just as the negligent driver in *Lasprogata v. Qualls, supra,* breached a duty different from the one breached by the negligent treating physician in the same case. The evidence that would establish the liability of Ms. Ginosky for assault, moreover, would not establish the liability of the Glombs for negligent hiring. Nevertheless, some of the *Voyles* factors weigh *against* allowing apportionment in this case. For example, the brain damage, disfiguration and attendant physical disabilities that Tia Marie has suffered are divisible for purposes of medical diagnosis, but they are indivisible for purposes of attributing them to either the willful misconduct of Ms. Ginosky or the negligent misconduct of the Glombs. Similarly, the misconduct of Ms. Ginosky and the misconduct of the Glombs have produced the same result: Tia Marie's severe and debilitating injuries. Even if most of the *Voyles* factors superficially support apportionment, our analysis

leaves us without a "logical, reasonable or practical" basis upon which a jury could even roughly apportion the percentage of Tia Marie's injuries attributable to the Glombs' negligence. None exists.

The negligence of the Glombs worked in tandem with the deliberate misconduct of Ms. Ginosky to cause a single harm to Tia Marie. Although the Glombs did not act in concert with Ms. Ginosky, they acted concurrently with her. Their ongoing neglect of Tia Marie's welfare facilitated the ultimate infliction of the actionable harm. This case therefore differs from such cases as *Lasprogata* and *Voyles*, in which one party adds to or aggravates an injury already caused by another party. Had the Glombs heeded the signs of danger, they could have averted the harm altogether. Moreover, had Ms. Ginosky not acted upon the opportunity that the Glombs created, the Glombs' breach of duty would have constituted injuria absque damno, a mere legal wrong without loss or damage, The drafters of the Restatement (Second) of Torts recognized that a court cannot direct apportionment between a party whose misconduct facilitates the infliction of a harm and a party who actually inflicts that harm:

> One defendant may create a situation upon which the other may act later to cause the harm. One may leave combustible material, and the other set it afire; one may leave a hole in the street, and the other drive into it. Whether there is liability in such a case may depend upon the effect of the intervening agency as a superseding cause ... *but if the defendant is liable at all, he is liable for the entire indivisible harm which he has caused.*

Restatement (Second) of Torts § 433A comment i (emphasis added). The facilitative negligence of the Glombs in the present case is akin to the facilitative negligence of the party who leaves combustible material for another to ignite.

In *Wade v. S.J. Groves & Sons Co., supra,* we refused to apportion damages under circumstances analogous to those in the present case. The defendant landowners in *Wade*

had permitted the co-defendant contractor to use their property as a landfill. During heavy rainfall, waste from the landfill washed onto the plaintiff's adjoining property. We reversed the trial court's decision to apportion ten percent of the resulting liability to the landowners and ninety percent to the contractor. We observed that the landowners "did not cause ten percent or any other reasonably identifiable percentage of the dirt or fill to be deposited on the [plaintiff's] land" and that the court therefore lacked a reasonable basis for the apportionment. *Wade, supra* 283 Pa.Super at 474, 424 A.2d at 907. Likewise in the present case, we cannot attribute any "reasonably identifiable percentage" of Tia Marie's injuries to the negligence of her parents. The Glombs, like the landowners in *Wade,* were facilitators of another party's wrongdoing. As such, their negligence is bound inextricably to the wrongdoing of Ms. Ginosky. Because the trial court thus lacked any reasonably certain basis for isolating the Glombs' proportionate "share" of the liability, it properly refused to submit the question of apportionment to the jury.[1]

## II.

The Glombs further contend that the excessiveness of the jury's $1.5 million verdict warrants a new trial. We approach this claim ever-mindful that our standard of review is extremely narrow. The determination of damages lies initially within the discretion of the jury, which weighs the evidence and assesses the credibility of the witnesses. *See Simmons v. Mullen,* 231 Pa.Super. 199, 331 A.2d 892

---

4. The Glombs also argue that the court erred in not deciding the apportionability issue until after the jury rendered its verdict. The Glombs failed, however, to raise this issue in their motion for post-trial relief. We therefore consider the issue waived for purposes of appellate review. *See* Pa.R.A.P. 302(a); *Sullivan v. City of Philadelphia,* 314 Pa.Super. 381, 460 A.2d 1191 (1983). Even assuming that the Glombs preserved the issue for our review, and that the trial court did not rule conclusively on the issue before the jury retired to deliberate, we fail to see how this "error," if any, harmed the Glombs. The court could not have apportioned liability in this case, and the Glombs would not have benefitted from knowing this before the jury retired.

(1974). The decision to grant or to deny a new trial on the ground of excessiveness lies, in turn, within the discretion of the trial court. We will not disturb the decision absent a clear abuse of that discretion. *See Skoda v. West Penn Power Co.*, 411 Pa. 323, 191 A.2d 822 (1963); *Ammon v. Arnold Pontiac-GMC, Inc.*, 361 Pa.Super. 409, 522 A.2d 647 (1987); *Powell v. City of Philadelphia*, 311 Pa.Super. 526, 457 A.2d 1307 (1983). A verdict will stand unless its excessiveness shocks our sense of justice. *See Weed v. Kerr*, 416 Pa. 233, 205 A.2d 858 (1965); *Ammon v. Arnold Pontiac-GMC, Inc., supra; Robert v. Chodoff*, 259 Pa.Super. 332, 393 A.2d 853 (1978). This court has often reviewed excessive verdict claims in terms of six factors, which together provide a useful framework for our analysis:

> (1) the severity of the injury, (2) whether plaintiff's injury is manifested by objective physical evidence instead of merely the subjective testimony of the plaintiff, (3) whether the injury will effect the plaintiff permanently, (4) whether the plaintiff can continue with his employment, (5) the size of plaintiff's out-of-pocket expenses, and (6) the amount plaintiff demanded in the original complaint.

*Ammon v. Arnold Pontiac-GMC, Inc., supra* 361 Pa.Super. at 413, 522 A.2d at 649 (quoting *Robert v. Chodoff, supra* 259 Pa.Super. at 367, 393 A.2d at 871). *See also Mineo v. Tancini*, 349 Pa.Super. 115, 502 A.2d 1300 (1986); *Powell v. City of Philadelphia, supra; Kemp v. Philadelphia Transportation Co.*, 239 Pa.Super. 379, 361 A.2d 362 (1976). A proper evaluation of whether a verdict is excessive, however, eludes fixed standards and facile comparisons with past cases "because each case is unique and dependent on its own special circumstances." *Kemp v. Philadelphia Transportation Co., supra*, 239 Pa.Superior Ct. at 382, 361 A.2d at 364. *See also Trent v. Trotman*, 352 Pa.Super. 490, 508 A.2d 580 (1986); *Fretts v. Pavetti*, 282 Pa.Super. 166, 422 A.2d 881 (1980). In some cases, we have sustained verdicts without considering all six of the factors. *See, e.g., Trent v. Trotman, supra* (noted only severity of injuries, temporary disability, high medical expenses);

*Thompson v. Anthony Crane Rental,* 325 Pa.Super. 386, 473 A.2d 120 (1984) (severity of injuries, objective physical evidence, interference with employment). In others, we have observed that not all of the factors were applicable under the particular circumstances. *See, e.g., Ammon v. Arnold Pontiac-GMC, Inc., supra* (out-of-pocket expenses and amount demanded in complaint held inapplicable).

The Glombs in the present case do not question the severity of Tia Marie's injuries or that these injuries were "manifested by objective physical evidence." Uncontradicted testimony at trial established that Tia Marie suffered severe bruising on her head and face, that she remained unconscious for several days after the beating, that she remained in the hospital for two weeks, that she has suffered and continues to suffer neurological impairment, that the resulting loss of normal "language skills" and "motor skills" has required several years of intensive physical therapy and that three-year-old Tia Marie was unable to walk by herself at the time of trial. The Glombs focus instead upon the progress that Tia Marie has made towards recovery, the prospects for future employment and the lack of evidence on the out-of-pocket expenses incurred by their daughter.[5] Due consideration of these factors, they argue, would support the grant of a new trial based on the excessiveness of the verdict. We disagree.

Although Tia Marie's recovery appears to have exceeded the grim prognosis of the physicians who treated her at the hospital immediately after the beating, testimony at trial indicated that Tia Marie will continue to suffer significant problems for the rest of her life. The expert medical

---

**5.** The Glombs concede that the amount of damages demanded by Tia Marie in her "original complaint" is not material to our review of the excessiveness claim. Our rules of procedure require that "[a]ny pleading demanding relief for unliquidated damages shall without claiming any specific sum set forth only whether the amount is or is not in excess of $10,000." Pa.R.C.P. 1021(b). When Rule 1021(b) prohibits a plaintiff from demanding a specific amount of damages in his or her complaint, the court cannot consider the amount demanded in evaluating the excessiveness of the verdict. *See Ammon v. Arnold Pontiac-GMC, Inc., supra,* 361 Pa.Super. at 414–415, 522 A.2d at 650.

testimony included that of Tia Marie's pediatrician, Julius Vogel, Jr., M.D., who has treated the child since her discharge from the hospital. Dr. Vogel discussed Tia Marie's continued lack of dexterity and inability to walk. Toward the close of his direct examination, the following exchange occurred:

Q. Doctor, based on your years of experience in pediatrics and your treatment of Tia Glomb in this case, are you able today to give us an opinion as to what you believe her prognosis is?

A. I would say that to some degree she will carry these injuries throughout life, the results of these injuries. It is very difficult to say whether it will be very mild or more than that, but to some degree this will have some effect.

N.T. 10/22/84 at 158. The testimony also included that of Suzanne Mills, M.D., who assisted in the treatment of Tia Marie at the hospital in November of 1982. Dr. Mills testified in part as follows:

Q. Doctor, for my next question I want you to assume that as of last Saturday [Tia Marie] was unable to walk by herself; that is, in order for her to walk, she would have to be aided or hold onto something. How does that fit in with your prognosis as to permanent damage?

A. That would be consistent with what we felt her prognosis to be at the time we discharged her.

Q. So you are saying then within a reasonable degree of medical certainty, that she will never be normal?

A. That is, most likely she will never be normal.

Q. In your opinion, will she require treatment in the future?

A. Yes. At the time of discharge, we strongly recommended rehabilitation in D.T. Watson or a similar rehabilitation institute for a prolonged period of time. We felt that she should stay in the institute for intensive therapy, because her situation was so poor.

Q. In terms of treatment, would that be the main course of treatment, therapy?

A. At that time that was what we felt would be the best treatment for Tia medically.

Q. What other kinds of treatment would there be besides therapy, if any?

A. At this time there's no medically proven way of reversing diffuse brain injury. So you have to deal with trying to rehabilitate patients who have diffuse brain injury.

N.T. 10/23/84 at 221–23. Of course, the experts who testified at trial could not offer a unanimous and definite prognosis. We assign to the fact finder, however, the task of assessing the worth and credibility of the testimony on the issue of damages. *See Lokay v. Lehigh Valley Cooperative Farmers, Inc.*, 342 Pa.Super. 89, 492 A.2d 405 (1985); *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243 (1983). The jury in this case certainly had ample reason to conclude that Tia Marie's injuries will affect her permanently.

Similarly, the jury had reason to conclude that Tia Marie's injuries will impair her future earning capacity. Because Tia was only fourteen months old on November 3, 1982, we look not to her ability to "continue with her employment" but to the effect of her injuries on her capacity to earn a living in the future. As we observed in *Lewis v. Pruitt*, 337 Pa.Super. 419, 430, 487 A.2d 16, 21 (1985), "[t]he test for impaired earning capacity is whether the economic horizon of the disabled person has been shortened because of the injuries sustained as a result of the tort-feasor's negligence." *See also, Bochar v. J.B. Martin Motors*, 374 Pa. 240, 97 A.2d 813 (1953). Although none of the evidence at trial directly addressed the issue of future earning power, the jury could have inferred from the evidence that Tia Marie's potentially permanent disabilities will shorten considerably her "economic horizon."

■ We find sufficient evidence in the record to justify the verdict of the jury in this case. Given the severity of

the injuries, the ability of the fact finder to ascertain the extent of those injuries through objective evidence, the potential permanence of at least some of Tia Marie's physical disabilities and the consequential impairment of future earning capacity, the $1.5 million award neither shocks our sense of justice nor evidences undue passion and sympathy for the plaintiff. We agree with the Glombs that the record fails to substantiate Tia Marie's claim for $13,304.72 in medical expenses. This lone deficiency in the evidence, however, does not render the jury's award excessive.[6]

### III.

For the above reasons, we affirm the judgment of the Beaver County Court of Common Pleas.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring:

I concur in the result reached by the majority. Although I join wholeheartedly in Part II of the majority's opinion, I differ with the rational underlying the majority's approach in Part I.

The majority concludes that the question of whether liability is capable of apportionment depends on whether a

6. In their petition for reargument, the Glombs argue that the trial court failed to follow the directive of our supreme court in *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971). The Glombs observe that when the court decided in *Falco* to abrogate parental immunity in personal tort actions, it cautioned trial courts to devise means of discouraging collusive lawsuits. In the present case, the Glombs raise the possibility of collusion between the guardian ad litem and Tia's paternal grandmother. We find this issue waived for two reasons. First, the Glombs failed to raise it in their brief for appeal. This court will not consider issues that the appellant has not set forth or suggested in the "Statement of Questions Involved" portion of his or her brief. *See* Pa.R.A.P. 2116(a). Second, the trial court afforded counsel for the Glombs the opportunity during the trial to discuss the issue of collusiveness on the record at sidebar. As the trial court observed in its opinion, counsel "opted to forgo such discussion." Tr.Ct.Op. at 16. Failure to raise an issue in the form of a timely objection at trial will constitute waiver of that issue on appeal. *See Reilly v. Southeastern Pennsylvania Transportation Auth.,* 507 Pa. 204, 489 A.2d 1291 (1985).

"logical, reasonable or practical" basis exists for apportionment.[1] I however, believe that the majority's position begs the question of how to properly ascertain whether liability is capable of apportionment. The majority determines whether liability is capable of apportionment by using a purely arbitrary *ad hoc* standard lacking in any legal principle.

I believe that the better approach, in determining whether liability is capable of apportionment, would be to determine whether the defendants acted as joint tortfeasors. The question of whether liability is capable of apportionment has consistently been determined by whether the alleged tortfeasors acted jointly or separately. *Riff v. Morgan Pharmacy,* 353 Pa.Super. 21, 508 A.2d 1247 (1986), *appeal denied,* 514 Pa. 648, 524 A.2d 494 (1987) (issue of whether liability is capable of apportionment hinges on whether defendants acted separately or as joint tortfeasors); *see Harka v. Nabati,* 337 Pa.Super. 617, 487 A.2d 432 (1985); *Capone v. Donovan,* 332 Pa.Super. 185, 480 A.2d 1249 (1984); *Pratt v. Stein,* 298 Pa.Super. 92, 444 A.2d 674 (1982); *Voyles v. Corwin,* 295 Pa.Super. 126, 441 A.2d 381 (1982); *Wade v. S.J. Groves & Sons Co.,* 283 Pa.Super. 464, 424 A.2d 902 (1981); *Lasprogata v. Qualls,* 263 Pa.Super. 174, 397 A.2d 803 (1979). To be a joint tortfeasor, two or more persons " 'must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury.' " *Wade,* 283 Pa.Super. at 475 n. 8, 424 A.2d at 907 n. 8 (quoting Black's Law Dictionary (4th ed. 1968)); *see Pratt,* 298 Pa.Super. at 150–151 n.

---

1. The majority's reliance on *Martin v. Owens-Corning Fiberglas Corp.,* 515 Pa. 377, 528 A.2d 947 (1987), is inapposite to the instant case. In *Martin,* a products liability case, our Supreme Court addressed the issue of whether liability for plaintiff's disability was capable of apportionment between plaintiff himself and the defendants where plaintiff had a long history of cigarette smoking and worked with products containing asbestos manufactured by the defendants. Our Supreme Court, however, was not confronted, as we are in the instant case, with the question of whether liability is capable of apportionment when the actions of two or more persons combine to harm a third party.

50, 444 A.2d at 705 n. 50; *Lasprogata,* 263 Pa.Super. at 179, 397 A.2d at 805 n. 4.[2] This approach provides a terse and conclusive means of determining whether liability is joint or separate.

Under the approach that I propose, if a court determines that the defendants are joint tortfeasors, each defendant is liable for the entire amount of the judgment. *See* Restatement (Second) of Torts § 875 (1979). If one tortfeasor pays the entire amount, he or she may seek contribution from his or her co-defendant(s). *See Wade,* 283 Pa.Super. 464, 424 A.2d 902 (contribution distributes the loss equally or each joint tortfeasor pays his or her pro rata share). On the other hand, if a court determines that the defendants are not joint tortfeasors, i.e., that liability is capable of apportionment, then the issue of the actual apportionment itself is submitted to the jury. *See* Restatement (Second) of Torts § 434(1)(b) and (2)(b) (1977) (function of the court is to make the initial determination of whether apportionment is possible; if so, function of the jury is to make the apportionment).

**2.** The approach that I espouse varies from prior decisions of this Court which determined whether the tortfeasors acted separately or as joint tortfeasors by considering certain "factors" rather than utilizing the well established definition of joint tortfeasors. *See Voyles,* 295 Pa.Super. at 130–131, 441 A.2d at 383. The text of Prosser from which these "factors" were taken indicates that each "factor" was actually a *test in itself* that was developed by a court or proposed by an author to determine joint tortfeasor status. *See* Prosser & Keeton on the Law of Torts § 46, at 322 (5th ed. 1984). I disagree with the majority's continued use of these factors since they constitute a series of subtle and complex considerations that create a very restrictive standard for courts to use in determining whether liability is joint or separate. The majority's opinion demonstrates this. While the majority states that most of the factors weigh in favor of allowing apportionment of liability between the Glombs and Ginosky, the majority ultimately concludes that apportionment is not possible in the instant case. The majority states: "Even if most of the *Voyles* factors superficially support apportionment, our analysis leaves us without a 'logical, reasonable or practical' basis upon which a jury could even roughly apportion the percentage of Tia Marie's injuries attributable to the Glombs' negligence. None exists." Majority opinion at 214–215. I, consequently, conclude that these "factors" should be eliminated from a court's consideration in determining whether liability is joint or separate.

In the instant case, I would find that the actions of Ginosky and the Glombs come within the definition of joint tortfeasors.[3]  The negligence of the Glombs merged with the intentional misconduct of Ginosky to cause a single harm to Tia.  Although the Glombs did not act in concert with Ms. Ginosky, they acted concurrently.  The Glombs' continual neglect of Tia's welfare facilitated the ultimate infliction of Tia's injury by Ginosky.  Consequently, I concur in the majority's result that the trial court properly refused to submit the question of apportionment to the jury on the basis that the Glombs and Ginosky are joint tortfeasors who are each liable for the entire amount of the judgment.

**3.** The majority's opinion avoids addressing the question of whether defendants are joint tortfeasors.  The majority avoids this determination because the majority's primary concern in resolving the issue of whether liability is capable of apportionment, is to prevent the situation where a joint tortfeasor satisfies the entire amount of the judgment and is then unable to obtain contribution from his or her joint tortfeasor(s).  Majority opinion at 211–213.  I, however, do not believe that the primary focus should be on protecting the wrong-doer's finances but rather, on ensuring that the innocent injured victim is compensated.