J-A24007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MJ BYELICH PROPERTIES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JJL NORMANDY PROPERTIES, LLC, | : | |
| AND CHRIS ELER | : | |
| | : | No. 2904 EDA 2023 |
| Appellant | : | |

Appeal from the Judgment Entered October 17, 2023
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2021-02831

BEFORE:  LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED APRIL 3, 2025**

JJL Normandy Properties, LLC, and Chris Eler appeal from the judgment, entered in the Court of Common Pleas of Bucks County, after a jury returned a verdict in favor of Appellee MJ Beylich Properties, LLC.  After our review, we affirm.

The trial court set forth the factual and procedural history of this matter as follows:

> This case involves a trespass by water infiltration between adjoining properties.  [Appellants] own a commercial property situated uphill from [Appellee], MJ Byelich's [] commercial property.  [Appellants] trespassed onto [Appellee's] property by causing artificially directed water to enter [Appellee's] property[,] rendering [Appellee's] property undevelopable.
>
> In October of 2019, Mark Byelich, managing member of [Appellee,] decided to purchase the property at issue in this case to create a permanent residence for [Appellee's] wealth management firm.  [Appellee's] property consists of raw land behind the building that houses the firm but extends behind

[Appellants'] building as well. The raw land factored into Byelich's decision to buy the property.

At the time of purchase, Byelich had plans for the raw land. The previous owner supplied Byelich with previously approved plans for the development [of] another office building (7500 square feet) and a parking lot. However, nothing can be done before mitigating the water trespass. [Appellee] does not have control over the water infiltration because it is coming from [Appellants'] property. Therefore, [Appellee's] raw land is left undevelopable.

Shortly after purchase, Byelich observed that the raw land was soaked with water[,] causing him to sink to his ankles when walking through the field. Around January 2020, Byelich observed two big PVC pipes installed on [Appellants'] property, through which water flowed out of the ground onto [Appellee's] property. Even Eler testified that he directed the installation of the new white piping which directed and discharged water onto [Appellee's] property.

Eler[, managing member of Appellant JJL Normandy Properties, LLC ("JJL"),] testified that[,] around this time, he was renovating JJL's building[,] a three-hundred-year-old mill[,] which consisted of two separate buildings. The renovation connected [those buildings] by creating an atrium. JJL is an LLC [whose] sole purpose [is] to hold the real estate located at 1071 Lindehurst Road[,] the property adjoining [Appellee's] property. In this case, JJL was set up to avoid liability.

[Appellants'] building housed Eler's business, State Capital Title and Abstract Company[,] and a construction firm. The construction firm is the firm that performed JJL's building renovations; however, Eler refused to answer an interrogatory [that] asked the name of the contractor that designed the water system and testified at trial that he did not know. At some point in his testimony, [Eler] finally gave the name, ELMS Construction. Eler combatively stated that [] he thought [the interrogatory was asking] who designed the original water system; in this case, he said that ELMS "rehabilitated it." [Eler] also stated that he did not know the cost of the renovation even though he admitted he signed the contract for the work and was responsible for paying for the work.

Eler admitted that the roof, which is artificial[,] increased in surface area during the renovation[, t]hereby[] increasing impervious surfaces[. H]owever, Eler did not produce permits or

inspections showing impervious inspection approvals for the renovation. Eler testified that was [Appellee's] job; however, [Appellee's] counsel went to the township to pull the permits and there [were] none. Eler further admitted that there are fourteen artificial downspouts, and a grate that collects water coming off of the road in front of the building to make sure it does not enter his building.

On four to six different occasions from about 2020 until present, Byelich observed [Appellants] installing large hoses (fire hose size) directing the water to flow onto [Appellee's] property. Byelich attempted to contact Eler several times as early as January of 2020. The two spoke and Byelich asked Eler if he could stop pumping water onto [Appellee's] property by redirecting the hose elsewhere. Eler explained that it has always been that way. Later, Eler sent Byelich an email in an attempt to further explain the history of pumping and reiterate that it[ has] always been that way. Basically, Eler believes it is not his problem because water has always been pumped out of his property onto the adjoining property.

Eler testified that he thought about working amicably with [Appellee] to install a berm or otherwise address the issues; however, he did not do any of it because "it would require [Eler] to do extensive engineering and, [he] assume[s], all sorts of due diligence to understand whether [he] is allowed to do that."

Further, Eler never hired an engineer to determine how to address the drainage or runoff from his property onto [Appellee's] property because he "didn't feel like [he] was required to do that." Eler stated the condition was pre-existing and he did not feel responsible to address the water he was allowing to be artificially directed to his neighbor's downhill property.

Eler never spoke to Byelich about an attempt to mitigate. In fact, when Byelich told Eler he had obtained an estimate to build a berm, Eler said, "you can't do that. You'll flood my property."

Byelich took videos between November of 2020 and September of 2021 showing different hoses and pipes that artificially direct water onto [Appellee's] property. At some point in early 2023, Eler [] move[d] the piping further away from [Appellee's] property[, as Appellants' drainage system had been intruding several feet onto Appellee's property]; however, the water still trespasses onto [Appellee's] property.

- 3 -

Eler admitted that he is able to and does direct water somewhere other than [Appellee's] property. There is an underground sump-pump that is pumping water out of Eler's building into Core Creek through a two-inch PVC pipe that runs across his property. By contrast, the two PVC pipes that direct water onto [Appellee's] property are larger than the two-inch pipe to Core Creek.

Byelich testified that the value of [Appellee's] raw land is estimated at $650,000.00. This figure is based on the 7,500 [square foot] previously approved development [plan] that the previous owner supplied to Byelich at the time [Appellee's] property was purchased. Construction costs to build the approved plan are estimated at $1.2 million. Based on the real estate in the area for that square footage of office space, the finished value of the 7,500 square [foot] plan is estimated to be $1.8 million. The difference between the finished value of the approved plan and the cost to construct it equals the value of the raw [] land[,] which is $680,625.00.

Prior to trial, on May 16, 2023, [Appellants] filed a motion *in limine* to exclude [the] testimony and report of [Appellee's] expert, Robert Koruch, on the grounds that [Appellee] failed to comply with the court's order [] entered March 6, 2023, directing [Appellee] to respond to discovery[,] including interrogatories and request[s] for production (which required [Appellee's] expert report), no later than March 23, 2023. On May 30, 2023, the court held oral argument of the motion *in limine* and limited all evidence to discovery that was exchanged up to March 23, 2023.

On May 31, 2023, [Appellants] filed a motion *in limine* to preclude [Appellee's] March 23, 2023 letter and testimony from [Appellee's] expert. On June 1, 2023, the court held oral argument on the motion *in limine* after the parties made opening statements to the jury. The court granted the motion *in limine* and precluded [Appellee's] expert from testifying.

[On June 2, 2023, the jury returned a verdict in favor of Appellee, awarding compensatory damages for the decreased value of the property in the amount of $300,000.00 and punitive damages in the amount of $200,000.00.] On June 12, 2023, [Appellee] filed a motion [] to mold [the v]erdict [to include Pa.R.C.P.] 238

- 4 -

damages.[1]  [That same day, Appellants filed a post-trial motion.] On August 11, 2023, the court held oral argument on [Appellee's delay-damages] motion.  On October 13, 2023, the court entered [orders granting Appellee's delay damages motion and denying Appellants' post-trial motion.  Judgment was entered in favor of Appellee on October 17, 2023.]

Trial Court Opinion, 1/25/24, at 2-9 (unnecessary capitalization and footnotes omitted).

This timely appeal follows, in which Appellants raise the following issues for our review:[2]

---

[1] "At the request of the plaintiff in a civil action seeking monetary relief for . . . property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant . . . found to be liable to the plaintiff in the verdict of a jury[.]"  Pa.R.C.P. 238(a)(1).

[2] We have reworded and reorganized Appellants' stated issues.  We have also combined certain of Appellants' claims, as the substance of the argument sections pertaining to those claims is redundant.  In particular, questions 1, 2, 3, 4, 5, and 7 all purport to raise distinct claims.  However, the corresponding argument sections all essentially repeat versions of the same fundamental argument, i.e., that Byelich was unqualified to testify as to causation and damages and, therefore, Appellee failed to prove its claims. Accordingly, as the trial court and Appellee have previously done, we have attempted to identify Appellants' discrete claims and address them as best we can.  *See* Trial Court Opinion, 1/25/24, at 18-19 (noting issues raised in Appellants' Rule 1925(b) statements "are anything but concise" and combining issues to avoid redundancy); Brief of Appellee, at 14-19 (noting "extravagant" nature of Appellants' Rule 1925(b) statements and suggesting quashal for failure to comply with Rules of Appellate Procedure by, *inter alia*, stating "concisely" the issues to be resolved).  We further note that Appellants omit from their brief a "[s]tatement of place of raising or preservation of issues" as required by Pa.R.A.P. 2117(c).  Given our determination, *infra*, that multiple of Appellants' claims have been waived for failure to preserve them, the absence of a Rule 2117(c) statement is particularly glaring in this matter. Nevertheless, we decline to quash the appeal and proceed to address those issues we are reasonably able to glean from Appellants' argument.

1. Whether the evidence was sufficient to establish causation under Appellee's theories of negligence, nuisance, and/or trespass.

2. Whether the evidence was sufficient to support the jury's damages award?

3. Whether the jury's monetary award of compensatory and punitive damages was excessive.

5. Whether the trial court erred in precluding Appellants from presenting relevant evidence at trial.

6. Whether the trial court erred in failing to sustain Appellants' objection to statements made by Appellee's counsel during his closing argument and in failing to give a curative instruction.

7. Whether the trial court erred as a matter of law and abused its discretion in granting Appellee's motion to award delay damages under Pa.R.C.P. 238.

**See** Brief of Appellants, at xiv-xvii (issues reorganized, combined, and reworded for ease of disposition).[3]

_____

[3] In section X. of their argument section, Appellants raise the following issue:

The trial court erred as a matter of law and abused its discretion in denying the post-trial motion by permitting the Appellee to advise the jury that it would present expert witness testimony in support of its claims and outlining such purported expert support for its claims, before the trial court ruled on Appellants' motion *in limine* to exclude Appellee's expert witness' expert report and testimony [], and then ultimately granting Appellants' motion *in limine* and excluding Appellee from presenting the expert report during trial and precluding testimony from Appellee's expert witness, and without giving a curative instruction to the jury.

Brief of Appellants, at 54. This claim is waived for multiple reasons. "In order to preserve an issue for appeal, a litigant must make a timely, specific objection at trial and must raise the issue on post-trial motions." **Thorson v. EDDW, LLC**, 309 A.3d 141, 148 (Pa. Super. 2024), quoting **Reilly by Reilly v. Southeastern Penn. Transp. Auth.**, 489 A.2d 1291, 1296 (Pa. 1985). *(Footnote Continued Next Page)*

We first address whether the evidence was sufficient to establish causation under Appellee's claims of negligence, nuisance, and trespass. Appellants claim that the trial court erred by denying their motion for a directed verdict at the close of Appellee's case and by also denying their post-trial motions for a new trial and judgment notwithstanding the verdict ("JNOV"). Appellants argue that Appellee "did not present any evidence that water from [] Appellants' property actually caused its property to be valueless" and that "permitting [Byelich,] a lay witness[,] to blatantly offer the very same expert testimony that the trial court had previously excluded was highly prejudicial and constitutes reversible error." Brief of Appellants, at 49. Appellants also assert that Byelich "testified that [his property] was damaged because [he] *thought* that [] Appellants' renovated stormwater management

---

"[I]f no objection is made, error which could have been corrected . . . during trial by timely objection[] may not constitute a ground for post-trial relief." Pa.R.C.P. 227.1(b)(1), Note. Here, Appellants raised no issue regarding counsel's opening statement following the trial court's grant of Appellants' motion *in limine*, did not request a curative instruction, and failed to raise the issue in their post-trial motion. Accordingly, the claim is waived.

Moreover, the claim addressed in section X. of Appellants' brief was not raised in the statement of questions presented. **See** Brief of Appellants, at xiv-xvii. Pursuant to Pa.R.A.P. 2116, no question will be considered on appeal unless it is stated in the statement of questions involved or is fairly suggested thereby. **See** Pa.R.A.P. 2116(a). The claim raised in section X. of Appellants' argument section is neither included in the statement of questions presented nor fairly suggested thereby. Accordingly, it is also waived for that reason. **See In re K.T.E.L.**, 983 A.2d 745, 750 (Pa. Super. 2009) (finding challenges to statutory grounds for terminating parental rights waived on appeal because they were not raised in statement of questions involved).

system was discharging more water into the [d]rainage [a]rea, without presenting any basis for that claim." *Id.* (emphasis in original).

Appellants further argue that Appellee's claims required the testimony of an expert as to causation, "which required a highly technical analysis of the existing water management system, changes made to the previous system, and how those changes allegedly increased water flow" to the Appellee's property. *Id.* at 15. Appellants contend that there was "no way for [Appellee] or the jury to know whether water flowing from [Appellants'] property was actually the cause of the damage to [Appellee's] property because [Appellee] did not obtain or present any evidence of the same." *Id.* at 28. Appellants are entitled to no relief.

> [A] jury verdict may be set aside as inadequate "when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Where the jury's verdict is so contrary to the evidence as to 'shock one's sense of justice[,]' a new trial should be awarded." [*Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994)] (citations omitted). [It is] within "the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses," and if the verdict "bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgement for the jury's." *Id.* Yet, where "the injustice of the verdict 'stand[s] forth like a beacon', a court should not hesitate to find it inadequate and order a new trial." *Id.* (citations omitted).

*Mader v. Duquesne Light Co.*, 241 A.3d 600, 612–13 (Pa. 2020).

> Our standards of review when considering motions for directed verdict and [JNOV] are identical. We may reverse only if we find an abuse of discretion or an error of law [that] controlled the outcome of the case. We must also consider the evidence,

- 8 -

together with all favorable inferences drawn therefrom, in a light most favorable to [appellee], the verdict winner. We must . . . afford the verdict winner the benefit of every inference which may reasonably be drawn from the evidence, while rejecting all unfavorable testimony and inferences.

*O'Sullivan v. Joy Techs., Inc.*, 666 A.2d 664, 667 (Pa. Super. 1995).

With these standards in mind, we proceed to a determination as to whether Appellee's evidence was sufficient to sustain the jury's verdict. Appellee proceeded under theories of negligence, private nuisance, and trespass.

"To maintain a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct[,] that the defendant breached that duty[,] that such breach caused the injury in question[,] and actual loss or damage." *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003) (citation and quotation marks omitted).

Additionally,

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

*Diess v. Pa. DOT*, 935 A.2d 895, 905 (Pa. Cmwlth. 2007), citing Restatement (Second) of Torts § 822. *See also Kembel v. Schlegel*, 478 A.2d 11 (Pa. Super. 1984) (acknowledging adoption by Pennsylvania Supreme Court of section 822 of Restatement (Second) of Torts as test to determine private

nuisance). The Restatement further defines the harm necessary to impose liability under nuisance law as "significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." **Kembel**, 478 A.2d at 15, citing Restatement (Second) of Torts, § 821F.

Finally, "[t]he tort of trespass is '[a]ny physical entry upon the surface of the land,' and may occur by any number of means, such as walking on, flooding, or throwing objects on land." **Caruso-Long v. Reccek**, 243 A.3d 234, 238 (Pa. Super. 2020), quoting **Jones v. Wagner**, 624 A.2d 166, 169 (Pa. Super. 1993) (citation omitted).

Here, Appellee's claims at trial were all grounded in its contention that Appellants' artificial direction of water onto Appellee's lower-lying property caused damage to Appellee's property. In Pennsylvania, specialized rules have been developed as to when an upper landowner may be liable for the effects of surface water running off its property. "The law regards surface water as a common enemy which every proprietor must fight to get rid of as best he may." **Laform v. Bethlehem Twp.**, 499 A.2d 1373, 1378 (Pa. Super. 1985). Under the so-called common-enemy rule,

> [o]ur Supreme Court has held that, because water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior tenement for the discharge of all waters which by nature rise in or flow or fall upon the superior. Therefore, an owner of higher land is under no liability for damages to an owner of lower land caused by water which naturally flows from the one level to the other.

> **Notwithstanding the above**, the right of the upper landowner to discharge water on the lower lands of his neighbor is, in general, a right of flowage only, in the natural ways and natural quantities. Thus, **if the upper landowner alters the natural conditions so as to change the course of the water, or concentrates it at a particular point, or by artificial means . . . increases its volume, he becomes liable for any injury caused thereby**. In other words, it is only where the water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury.

*Kowalski v. TOA PA V, L.P.*, 206 A.3d 1148, 1160 (Pa. Super. 2019), quoting *Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057, 1073 (Pa. Super. 2014) (emphasis added; internal citations, quotation marks, brackets, and footnote omitted).

In brief,

> **A landowner may not alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon the lower land of his neighbor even though no more water is thereby collected than would naturally have flowed upon the neighbor's land in a diffused condition**. One may make improvements upon his own land, especially in the development of urban property, grade it and build upon it, without liability for any incidental effect upon adjoining property even though there may result some additional flow of surface water thereon through a natural watercourse, but he may not, by artificial means, gather the water into a body and precipitate it on his neighbor's property.

*Leiper v. Heywood-Hall Const. Co.*, 113 A.2d 148, 150 (Pa. 1955) (internal quotations omitted) (emphasis added).

Here, Byelich testified that he owns property adjacent to, and downhill from, Appellants' property. When he purchased the property, his intention was to develop it. *See* N.T. Trial, 5/31/23, at 111, 113. However, shortly

- 11 -

after purchasing the property, Byelich performed a walkthrough of the area and "sunk down, up to about [his] ankles . . . and what [he] determined was that water was being pumped onto [his] property." *Id.* at 114. Byelich noted that there was construction underway on Appellants' property and was "hopeful that this was just an issue that was going on during construction." *Id.* However, "[s]hortly thereafter, [] large PVC pipes arrived and [Byelich] saw that it was a more permanent situation." *Id.* at 114-15. When it rained even moderately, Byelich observed water coming out of the pipes onto his property, ponding and pooling in different areas. *Id.* at 116-18. Byelich testified that, on multiple occasions, he also observed firehose-sized pipes pumping water onto his property. *Id.* at 117. Although Byelich could not state with precision how deep the water gets, "it looks pretty darn deep at times." *Id.* at 118. Byelich testified that, as it stands, he would be unable to build on the parcel of land affected by the water flowing from Appellants' property. *Id.* at 120. In support of Byelich's testimony, Appellee presented several videos Byelich had taken over a period of 1½ to 2 years, depicting water flowing onto his property through the pipes and hoses installed by Appellants and pooling on the property. *See id.* 126-152; Plaintiff's Exhibits 15-25.

Eler, himself, admitted that water flowed from his property onto Appellee's through the pipe he installed. *See Id.* at 69-75 (Eler repeatedly agreeing that photos taken by him depict water flowing through pipe and collecting on Appellee's property); *id.* at 74 (Eler testifying "[t]here is water

coming out of my pipe, yes"); *id.* at 75 ("Q: Okay. So[,] there's no doubt that you're causing or contributing to the amount of water on [Appellee's] property through your singular pipe; right? A: I would agree with [`]contribute[']").

In light of the testimony adduced at trial, it is apparent that Appellant, the upper landowner, "alter[ed] the natural conditions so as to change the course of the water[ and] concentrate[d] it at a particular point[.]" *Kowalski*, 206 A.3d at 1160. Under the common enemy rule, that is all that is necessary to support a finding of liability. Moreover, as Appellants correctly note in their brief, "where something is not 'beyond the grasp of the average layperson,' no expert testimony is required." Brief of Appellant, at 34, quoting *Commonwealth v. Williams*, 141 A.3d 440, 462 (Pa. 2016). Here, the ability to observe water flowing from a pipe or hose and pooling on the ground is not something "beyond the grasp of the average layperson." *Williams*, 141 A.3 at 462. Accordingly, Appellee was not required to offer expert testimony to prove causation.

Appellants next argue that the evidence was insufficient to support the jury's damages award. Specifically, Appellants claim that Appellee presented no evidence of the market value of its property or the cost of repairs. *See* Brief of Appellants, at 30. Appellants further argue that the trial court should not have allowed Byelich to testify and "offer an expert opinion as to [] damages." *Id.* at 32. Appellants assert that, generally, expert testimony is necessary to establish the fair market value of real property, *id.* at 34, and

that Byelich "possessed no specialized skill and/or knowledge[] to render an expert opinion [] as to the diminution of value of [the] property[.]" *Id.* at 32. Appellants are entitled to no relief.

"A property owner is 'deemed qualified, by reason of his relationship as owner, to give estimates of the value of what he owns regardless of his knowledge of property valued, and the weight of such evidence is for the jury.'" *Shamnoski v. PG Energy a Div. of S. Union Co.*, 765 A.2d 297, 305 (Pa. Super. 2000), quoting *Pavloff v. City of Clairton*, 22 A.2d 74, 75 (Pa. Super. 1941). Additionally,

> under Pennsylvania law, damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences. Where the amount of damages can be fairly estimated from the evidence, the recovery will be sustained even though such amount cannot be determined with entire accuracy.

*A.Y. v. Janssen Pharm. Inc.*, 224 A.3d 1, 29 (Pa. Super. 2019).

In *Richards v. Sun Pipe Line Co.*, 636 A.2d 1162 (Pa. Super. 1994), this Court affirmed the denial of JNOV, concluding the trial court had properly admitted the testimony of the plaintiffs as to the diminished value of their property due to defendant's removal and pruning of plaintiff's trees to facilitate pipeline maintenance. The Court explained:

> Instantly, appellees testified concerning the value of their real estate. They testified that they believed the loss of privacy caused by the removal and pruning of the trees reduced the value of their property by $10,000.00. Although appellees testified that [they] had not performed any "market" study in arriving at the $10,000.00 figure, they did state that they based their valuation upon information learned about local property values at the time

they purchased their residence in 1985. In particular, appellees testified that when they purchased their home[,] they also looked at other homes of similar size [that] had larger lot sizes. Despite having larger lots, those houses were less expensive because, in appellees' opinion, they lacked trees for aesthetics and privacy.

*Id.* at 1165.

Similarly, here, the trial court properly allowed Byelich to testify as to the value of his property. Similar to the plaintiffs in **Richards**, Byelich testified that, in order to ascertain the current value of his property, he looked at other properties in the area, ascertained their values per square foot, and calculated the average to be slightly over $250.00 per square foot. **Id.** at 158-59. Using the previously approved plans for development supplied to him by the former owner of his property, Byelich estimated that, post-development, the property would be worth approximately $1.8 million. **Id.** at 159. Byelich estimated construction costs to be approximately $1.2 million. **Id.** Byelich subtracted the construction costs from the post-development value to arrive at a present-day value of $680,625.00. **Id.** The jury, as sole fact-finder, weighed this evidence and arrived at a compensatory damages value of $300,000.00. Accordingly, Appellants are entitled to no relief.[4]

---

[4] To the extent Appellants argue that the jury's award was unsupported due to Appellee's failure to present evidence of the cost of repair, Appellants have waived this argument for failure to raise it either in their post-trial motions or their Rule 1925(b) statement. **See Thorson**, **supra** (to preserve for appeal, issue must be raised in post-trial motions); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (issues not raised in timely Rule 1925(b) statement waived on appeal).

Appellants next assert that the jury's compensatory and punitive damages awards were excessive. Appellants argue that the award of compensatory damages "was so contrary to the weight of the evidence that a new trial on all claims, a new trial on damages, or judgment in favor of the Appellants" is required. Brief of Appellants, at 38. Appellants further claim that the punitive damages award does not meet the criteria of advancing the dual goals of punishment and deterrence and is "disproportionate to the character of the tortious act, to the harm suffered by the plaintiff, and to the wealth of the defendant." *Id.* at 39, quoting *Sprague v. Walter*, 656 A.2d 890, 927 (Pa. Super. 1995). Appellants assert that Appellee did not establish that its property was valueless or the cost to repair the property and, thus, neither damages award is "rooted in any evidence submitted at trial." *Id.* Appellants are entitled to no relief.

Our standard of review for the denial of a request for new trial based upon an excessive verdict is as follows:

> The grant or refusal of a new trial because of the excessiveness of the verdict is within the discretion of the trial court. This [C]ourt will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. We begin with the premise that large verdicts are not necessarily excessive verdicts. Each case is unique and dependent on its own special circumstances and a court should apply only those factors which it finds to be relevant in determining whether or not the verdict is excessive.

*Graham v. Campo*, 990 A.2d 9, 17 (Pa. Super. 2010).

> The determination of damages lies initially within the discretion of the jury, which weighs the evidence and assesses the credibility of the witnesses. *See Simmons v. Mullen*, [] 331 A.2d 892 ([Pa. Super.] 1974). The decision to grant or to deny a new trial on the

- 16 -

ground of excessiveness lies, in turn, within the discretion of the trial court. We will not disturb the decision absent a clear abuse of that discretion. *See Skoda v. West Penn Power Co.*, [] 191 A.2d 822 ([Pa.] 1963); *Ammon v. Arnold Pontiac-GMC, Inc.*, [] 522 A.2d 647 ([Pa. Super.] 1987); *Powell v. City of Philadelphia*, [] 457 A.2d 1307 ([Pa. Super.] 1983). A verdict will stand unless its excessiveness shocks our sense of justice.

*Glomb by Salopek v. Glomb*, 530 A.2d 1362, 1368 (Pa. Super. 1987).

Here, the trial court did not abuse its discretion in concluding that the jury's award of compensatory damages was not excessive. As noted above, Byelich presented competent testimony regarding the value of Appellee's land and the inability to develop it due to the conditions created by Appellants' refusal to redirect the water draining off their property onto Appellee's land. *See* N.T. Trial, 5/31/23, at 160-61 (Byelich testifying engineer informed him there is nothing he can do to develop the property until water issue mitigated); *id.* at 123 (Byelich testifying he told Eler he had estimate to construct berm to mitigate water drainage; Eler responded "You can't do that. You'll flood my property."). Under these circumstances, the jury's compensatory award of $300,000.00 does not shock the conscience and, therefore, Appellants are entitled to no relief.

Appellants' claim regarding the excessiveness of the jury's punitive damages award is waived for failure to develop their argument. "[I]t is well settled that an appellant bears the burden of sufficiently developing his arguments to facilitate appellate review." *Commonwealth v Armolt*, 294 A.3d 364, 376 (Pa. 2023). "[O]ur rules of appellate procedure are explicit that the argument contained within a brief must contain 'such discussion and

citation of authorities as are deemed pertinent.'" ***Wirth v. Commonwealth***, 95 A.3d 822, 837 (Pa. 2014), quoting Pa.R.A.P. 2119(a). "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him." ***Banfield v. Cortés***, 110 A.3d 155, 168 n.11 (Pa. 2015) (citation omitted). ***See Samuel-Bassett v. Kia Motors America, Inc.***, 34 A.3d 1, 29 (Pa. 2011) (litigant's "failure to develop the claim in any meaningful fashion . . . so as to allow for appellate review [is] a sufficient basis in itself to reject the argument") (citation omitted).

In their brief, Appellants set forth the standard for the award of punitive damages, followed by a conclusory statement that "[i]n this case, the punitive damages awarded by the jury do not meet these criteria[.]" Brief of Appellants, at 39. Appellants make no argument, with reference to the record, as to why the award does not meet the criteria for punitive damages, nor do they cite any non-boilerplate case law in support of their claim. Accordingly, we find this claim to be waived.[5]

---

[5] Even if this claim were not waived, we would find it to be meritless. Under Pennsylvania law the "size of a punitive damages award must be reasonably related to the State's interest in punishing and deterring the particular behavior of the defendant and not the product of arbitrariness or unfettered discretion." ***Hollock v. Erie Ins. Exch.***, 842 A.2d 409, 419 (Pa. Super. 2004), quoting ***Shiner v. Moriarty***, 706 A.2d 1228, 1241 (Pa. Super. 1998). *(Footnote Continued Next Page)*

- 18 -

Next, Appellants claim that the trial court erred by precluding them from presenting relevant evidence at trial. Specifically, Appellants claim that the court "did not permit [them] to fully present evidence on [Appellee's] contribution to the water pooling in the [d]rainage [a]rea" on Appellee's property. Brief of Appellants, at 50. Appellants assert that the trial court only allowed them to present "approximately half of one of the videos recorded by Eler during a rainstorm that showed considerable amounts of water flowing down from [Appellee's] property toward [Appellants'] property[] and the

---

In accordance with this limitation, "[t]he standard under which punitive damages are measured in Pennsylvania requires analysis of the following factors: (1) the character of the act; (2) the nature and extent of the harm; and (3) the wealth of the defendant." *Pioneer Comm. Funding Corp. v. Am. Fin. Mortg. Corp.*, 797 A.2d 269, 290 (Pa. Super. 2002), *rev'd on other grounds*, 855 A.2d 818 (Pa. 2004).

Here, the evidence adduced at trial demonstrated that Appellants were aware that water from its property was being artificially directed onto Appellee's property, rendering it unsuitable for development, yet refused to cooperate with Appellee in attempting to remedy the situation. *See, e.g.*, N.T. Trial, 5/31/23, at 39 ("[Plaintiff's Counsel]: [D]id you ever . . . think about directing those pipes in a different direction? [Eler]: Yes. Q: Well, did you do it? A: No."); *id.* at 119 ("[Plaintiff's Counsel]: Has [Eler] provided you any information whatsoever by which you could then proceed to try to figure out what the problem is or the scope of the problem? [Byelich]: No, not at all. [] I have no control over the situation at all."). *See Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 771-72 (Pa. 2005) ("reckless indifference to the rights of others and conscious action in deliberate disregard of them . . . may provide the necessary state of mind to justify punitive damages") (citation omitted). Accordingly, the trial court did not abuse its discretion in concluding that the jury's award of $200,000.00 in punitive damages bears a reasonable relationship to the State's interest in punishing and deterring the particular behavior of Appellants and was not the product of arbitrariness or unfettered discretion.

- 19 -

[d]rainage [a]rea" on Appellee's property.  *Id.*  Appellants claim that "Eler testified that the video marked D-12 showed water running from [Appellee's] property into the [d]rainage [a]rea, and the trial court interrupted Eler's testimony, questioned why the Appellants were showing video taken of [Appellee's] property, and directed the Appellants to move to the next video."  *Id.*  Appellants further allege that the trial court did not permit Eler to testify that, in his opinion, renovations performed on Appellants' property "lessened the flow of water" from Appellants' property.  *Id.*  Appellants are entitled to no relief.

First, Appellants' assertion that the trial court only permitted them to show one half of one of the videos recorded by Eler is not supported by the record.  Appellants refer to the following testimony to support their claim:

BY [DEFENSE COUNSEL]:

Q:  I am going to show you a video that has been marked as D-12.

    THE COURT:  When was it taken?

    THE WITNESS:  This was taken before the extension was run on this—

    THE COURT:  Sir, that's not a date.  Give me a date.

    THE WITNESS:  I believe it was June of 2021.

BY [DEFENSE COUNSEL]:

Q:  And who took the video?

A:  Me.

Q:  Can you just describe what we're seeing?

A:  Okay, so it's raining—

THE COURT:  Go back, please, so you can describe.

THE WITNESS:  Yeah.  It's raining.  I am now on the hill between the plaintiff's office and mine.  He sits uphill of me there and his downspout drain is right here.  There's not a lot of water coming through at all on that downspout drain.

BY [DEFENSE COUNSEL]:

Q:  So these are views of the plaintiff's property?

A:  Plaintiff's property, right.

Q:  Why was this video taken?

A:  Well, I thought it was important to show what the property looks like.  You can see that the downspouts—

THE COURT:  Whose property—

THE WITNESS:  Yes.  You can see the downspouts aren't working.

THE COURT:  That's not at issue in this case.  You have no claim against him; correct?

THE WITNESS:  Correct.  However—okay.  Yes.  I'm with you.

THE COURT:  Excuse me.  Counsel, what's the relevancy of what we're seeing here?  There's no claim against the [plaintiff] and it's the [plaintiff's] property.

[DEFENSE COUNSEL]:  That [] the defendants have maintained that water is also coming from the [plaintiff's] property onto the [] area in question, the basin.

THE COURT:  Let's deal with where the water is coming out of the hose, or not coming out of the hose, from the defendants' property.

[PLAINTIFF'S COUNSEL]:  Thank you, Your Honor, and I would object for another reason.  These videos are of my client's property, not the defendants' property, so he's—

THE COURT:  And that's what I'm asking.  What's the relevance?

[PLAINTIFF'S COUNSEL]:  Right.  Thank you, Your Honor.

- 21 -

[DEFENSE COUNSEL]:  That there's also water coming down from the defendants' property—

[PLAINTIFF'S COUNSEL]:  Objection.

[DEFENSE COUNSEL]:  —Plaintiff's property onto [] the area.

THE COURT:  Excuse me.

[DEFENSE COUNSEL]:  —that's pooling and it's the plaintiff's contention that all of the water is—

THE COURT:  Okay.  Be quick, please.

[DEFENSE COUNSEL]:  Yes, Your Honor.

[PLAINTIFF'S COUNSEL]:  Your Honor, but—let me object.  There's—that's not what that video shows.  It doesn't show the—

THE COURT:  Counsel, you have your interpretation of what it shows.  He has his interpretation of what it shows.

[PLAINTIFF'S COUNSEL]:  Okay.  Thank you, Your Honor.

THE COURT:  Next video.

[DEFENSE COUNSEL]:  Yes, Your Honor.

N.T. Trial, 6/1/23, at 114-17.

Here, there is simply nothing in the above-quoted portion of the trial transcript to substantiate Appellants' claim that the trial court only permitted Appellants to show "approximately one half" of Exhibit D-12.[6]  Moreover, when

_____

[6] We note that the videos taken by Eler are not included in the certified record on appeal.  It is Appellants' obligation to ensure that the certified record "contains all of the materials necessary for the reviewing court to perform its duty." ***Commonwealth v. Bongiorno***, 905 A.2d 998, 1000 (Pa. Super. 2006) (citation omitted).  As Appellants failed to ensure that the video evidence was transmitted to this Court, we could find this claim waived. ***See Commonwealth v. Whitaker***, 878 A.2d 914, 922–23 (Pa. Super. 2005) (failure to ensure complete certified record may render issue raised on appeal waived).  However, because we are able to dispose of this claim without viewing the video in question, we decline to find waiver on this basis.

the trial court directed counsel to move on to the next video, counsel did not object or attempt to make further inquiries about Exhibit D-12; she simply moved on to another video. *See id.* at 117 ("THE COURT: Next video. [DEFENSE COUNSEL]: Yes, Your Honor."). This failure to lodge a timely objection results in the waiver of this claim on appeal. *Thorson*, *supra*. Moreover, an objection to excluded testimony may be waived if, as happened here, counsel "acquiesces in the exclusion without obtaining a ruling by the court." *In re Lokuta*, 11 A.3d 427, 445 (Pa. 2011) (citation omitted). For these reasons, Appellants' claim is waived.

Appellants next claim that the trial court erred in failing to sustain their objection to Appellee's counsel's "unfounded," "scandalous," "inflammatory," and "irresponsible" statements regarding Eler during his closing argument and in failing to give a curative instruction, as the statements were improper, discussed facts not in evidence, and prejudiced Appellants. Brief of Appellants, at 52-53. Appellants specifically object to statements by Appellee's counsel referring to Eler as a "frat boy," claiming Eler never heard the word "no" from his mother or his wife, suggesting Eler thinks he is "above the law" and knew his renovations caused the water issues, and suggesting "that his family members (and dog) likely do not support him in this lawsuit and are probably afraid of him." *Id.* at 52. This claim is waived.

The absence of a contemporaneous objection below constitutes a waiver of an appellant's claim respecting statements made during closing argument. *See Commonwealth v. Powell*, 956 A.2d 406 (Pa. 2008), citing Pa.R.A.P.

302(a). Although counsel need not object during the closing argument, the claim is waived if an objection is not raised immediately thereafter, with "sufficient specificity to give the court the opportunity to correct the prejudicial effect of the improper argument." *Commonwealth v. Rose*, 960 A.2d 149, 154 (Pa. Super. 2008), citing *Commonwealth v. Adkins*, 364 A.2d 287, 291 (Pa. 1976); *Commonwealth v. MacBride*, 587 A.2d 792, 795–96 (Pa. Super. 1991).

Here, Appellants' counsel did not object to Appellee's counsel's statements during or immediately after the conclusion of the closing argument. Rather, counsel waited until long after the jury had been dismissed and the court had nearly concluded its charging conference. *See* N.T. Trial, 6/1/23, at 230. Even then, Appellants' counsel only objected to a purported statement by Appellee's counsel that Eler was "oppressive." *Id.*; *see id.* (court and Appellee's counsel agreeing that Appellee's counsel had actually used word "arrogant"). The trial court then raised the prospect of a cautionary instruction—which Appellee's counsel agreed to—but Appellants' counsel failed to respond. *See id.* at 232. When the court asked counsel if there was "anything else," Appellants' counsel responded "No, Your Honor." *Id.* Accordingly, this claim is waived.

Finally, Appellants assert that the trial court erred as a matter of law and abused its discretion in granting Appellee's motion to mold the verdict where Pennsylvania law did not support the entry of delay damages. This claim is waived.

Here, while Appellants' statement of questions involved frames this issue in terms of a challenge to the award of delay damages under Pa.R.C.P. 238, the argument presented on the claim challenges the jury's verdict as excessive. While Appellants pay lip-service to the standard of review of an award of delay damages and cites the portion of Rule 238 referring to the exclusion of delay damages for periods of delay caused by plaintiffs, *see* Brief of Appellants, at 19, Appellants make no effort to develop any argument related to the calculation of delay damages. Rather, the remainder of Appellants' argument on this claim consists of an application of six factors for analyzing whether a jury verdict in a personal injury matter is excessive, as set forth in ***Glomb v. Glomb***, 530 A.2d 1362 (Pa. Super. 1987). "When issues are not properly raised and developed in briefs, . . . a Court will not consider the merits thereof." ***Branch Banking & Tr. v. Gesiorski***, 904 A.2d 939, 942–43 (Pa. Super. 2006). ***See*** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); ***Commonwealth v. Cornelius***, 856 A.2d 62, 77 (Pa. Super. 2004) (declining to review claim where brief contains limited explanation and development of argument). As such, this claim is waived.

Judgment affirmed. Application for Relief denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/3/2025</u>